## GANNON et al. v. ALBRIGHT, Appellant.

### In Banc, June 22, 1904.

1. **WILL: Use of Words "Heirs," etc.** The use of the unnecessary words, "heirs and assigns forever," after words which, standing alone, without them, create a devise in fee, evinces no lack of confidence in the testator in the force of the words previously used, and does not cast a doubt upon the force of those words. On the contrary, the use of the words "and assigns" emphasizes the view that the testator meant to give an absolute fee.

2. **———: Fee Simple.** The first sentence of the clause of the will under consideration was: "I give, devise and bequeath unto my two sons, Michael J. Gannon, Jr., and Joseph E. Gannon and unto their heirs and assigns forever" eighty acres of land lying in St. Louis county. *Held,* that this sentence, standing alone, clearly and in unambiguous language devised a fee to the two sons.

Gannon v. Albright.

3. ——: ——: **Power to Sell.** After giving land to his two sons "and their heirs and assigns forever," the testator added, "It is my will that the same shall not be sold, at least not before the younger of the two becomes of lawful age." *Held,* that he understood that he had already granted them a fee simple with power of sale, and all he meant by this added clause was that the land was not to be sold during the minority of the younger one.

4. ——: ——: **Subsequent Limitation.** Where the words of a will at the outset clearly indicate a disposition by the testator to give the entire estate absolutely to the first donee, the estate will not be cut down to a less estate by subsequent or ambiguous words inferential in their intent.

5. ——: ——: **Power of Disposition: Limitation Over: Remainder Void: Executory Devise Void.** When the first devisee has the absolute right to dispose of the property in his own limited discretion, an estate over is void: void as a remainder, because of the preceding fee, after which a remainder can not be limited; and void as an executory devise, because a valid executory devise can not subsist under an absolute power of disposition in the first taker.

6. ——: ——: ——: ——: ——: ——: **Heirs: Estates Tail: Express and Implied.** The clause of the will in suit was: "I give, devise and bequeath unto my two sons, Michael J. Gannon, Jr., and Joseph E. Gannon and unto their heirs and assigns forever, my farm lying and being in the county of St. Louis and State of Missouri which lies in the southern limits of Kirkwood, containing 80 acres, be the same more or less. It is my will that the same shall not be sold, at least not before the younger of the two, that is, Joseph E. Gannon, becomes of lawful age; and should either of them die without issue, then the survivor, his heirs and assigns, to take, own and have the part and portion hereby bequeathed to the one so dying. And in the event both should die without leaving any issue, then it is my will that my surviving heirs (with the exception of my son, John T. Gannon, who has had his share) shall have such property like and like." The sons sold the land, and afterwards both died leaving issue, and this suit is by them to recover it from the purchasers. *Held, first,* that the first sentence in this clause gave an absolute estate in fee to the two sons; *second,* that estate was not cut down to an estate in tail, by the remainder given the survivor of the sons, or the executory devise to the issue of the survivor or to the testator's issue generally; *third,* the obvious purpose was to give the two sons a fee simple in the land, defeasible if they should die without issue, but as that contingency never happened, the fee

became absolute in the sons, even if the power of disposition had not been given them; *fourth*, it is manifest that there is no express gift to the heirs of the bodies of the sons, and hence the will does not in express words create an estate tail; *fifth*, the words "and their heirs and assigns forever," can not be explained as synonymous with issue, for to do that the words "assigns forever" must be stricken out and a strained construction given the word "heirs" itself; *sixth*, if a fee tail is to be implied it must be by construing the words "dying without issue," to mean "an indefinite failure of issue," and that can not be done since the statute of 1845 was enacted, for that statute requires the word "heirs" or "issue" to be construed as "heirs or issue living at the death of the person named as ancestor," and hence the words, "should either of them die without issue," did not have the effect of creating an estate tail and thereby cutting down the fee given the sons to life estates only; *seventh*, the words of the will, independent of the statute, indicate that the testator meant issue living at the death of the son or sons; *and, eighth*, the word "remainder," used in the statute of 1845, is broad enough to include executory devises. (Overruling Gannon v. Pauk, post, page 265 of this volume.)

7. ———: Implied Fee Simple: Issue: Statute of 1845. The statute of 1845 was meant to control fees tail as well as any other estate. By that statute the words "dying without issue" mean "heirs or issue living at the death of the person named as ancestor." So that where the will gives a fee simple to the first taker, and then adds that if he die without issue the property is to go to some other set of heirs, the first taker takes a fee defeasible upon his dying without issue living at his death, and if he die with such issue living the estate in fee in him is absolute.

8. ———: ———: ———: ———: Purpose of Statute. The Legislature had the power to enact the statute of 1845, and sections 5 and 6 of that act should be read together, and when that is done they mean that where at common law the will would have created an estate tail the first taker shall have a life estate and the next in line a fee simple, and that in determining whether the words "dying without issue" create an estate tail by implication, those words shall be construed to mean "dying without issue living at the death of the person named as ancestor," that is, the first taker.

9. ———: ———: Statute of 1845; English Law. The fact that estates tail were abolished by law in 1816 did not prohibit the Legislature from enacting the law of 1845 prescribing how certain words in devises thereafter creating estates tail should be construed. The courts were not thereafter compelled to con-

strue such wills according to the rules of the English common law, if in conflict with that statute.

10. ——: ——: ——: **Remainder.** The word remainder used in section 6 of the statute of 1845 is broad enough to include executory devises. (Overruling Gannon v. Pauk, post, page 265 this volume.)

Appeal from St. Louis County Circuit Court.—*Hon. Rudolph Hirzel,* Judge.

REVERSED.

*T. K. Skinker* for appellant.

(1) The will conferred upon the two sons, Michael, Jr., and Joseph, a fee simple, coupled with an absolute power of alienation. For this reason the devise over, under which the plaintiffs claim, is void. 4 Kent, Com. (10 Ed.), p. 270; 2 Washb. Real Prop. (6 Ed.), 667; Tiedeman, Real Prop., sec. 398; Jackson v. Bull, 10 John. 19; Jackson v. Robins, 15 John. 169, 16 John. 537; Helmer v. Shoemaker, 22 Wend. 137; Van Horne v. Campbell, 100 N. Y. 287; Ide v. Ide, 5 Mass. 500; Melson v. Doe, 4 Leigh 408; Riddick v. Cohoon, 4 Rand. 547; Cook v. Walker, 15 Ga. 457; Pickering v. Langdon, 22 Me. 413; Ramsdell v. Ramsdell, 21 Me. 288; Jones v. Bacon, 68 Me. 34; Rona v. Meier, 47 Iowa 607; McKenzie's Appeal, 41 Conn. 607. (2) At the least, the will conferred upon the two sons, Michael, Jr., and Joseph, a fee simple, determinable as to each upon his dying without issue living at the time of his death; and as they both died leaving issue, after having conveyed the land, their issue, the plaintiffs, have no interest in the land and can not recover. G. S. 1866, p. 442, sec. 5; Yocum v. Siler, 160 Mo. 281; McRee v. Means, 34 Ala. 349; Newsom v. Holesapple, 101 Ala. 682; Couch v. Gorham, 1 Conn. 36; Alfred v. Marks, 49 Conn. 473; Morgan v. Morgan, 5 Day 517; Russ v. Russ, 9 Fla. 105;

Gibson v. Hardaway, 68 Ga. 370; Harris v. Smith, 16 Ga. 545; Matthews v. Hudson, 81 Ga. 120; Daniel v. Daniel, 102 Ga. 181; Summers v. Smith, 127 Ill. 645; Strain v. Sweeney, 163 Ill. 603; Smith v. Kimbell, 153 Ill. 368; Jones v. Miller, 13 Ind. 337; Smith v. Hunter, 23 Ind. 580; Pape v. French, 122 Ind. 10; Boling v. Miller, 133 Ind. 602; Ross v. Ross, 135 Ind. 367; Hart v. Thompson, 3 B. Mon. 482; Daniel v. Thompson,. 14 B. Mon. 662; Mitchell v. Campbell, 94 Ky. 347; Inv. Co. v. Figg, 95 Ky. 403; Webb v. Baptist Church, 90 Ky. 117; Crozier v. Cundall, 99 Ky. 202; Buck v. Paine, 75 Me. 582; Hersey v. Purington, 96 Me. 166; Dallam v. Dallam's Lessee, 7 Harris & J. 220; Hilleary v. Hilleary, 26 Md. 274; Gambrill v. Lodge, 66 Md. 17; Devecmon v. Shaw, 70 Md. 219; Backus v. Assn., 77 Md. 50; Anderson v. Brown, 84 Md. 261; Richardson v. Noyes, 2 Mass. 56; Ide v. Ide, 5 Mass. 500; Brightman v. Brightman, 100 Mass. 238; Jordan v. Roach, 32 Miss. 481; Eaton v. Straw, 18 N. H. 320; Downing v. Wherrin, 19 N. H. 9; Pinkham v. Blair, 57 N. H. 226; Den v. Taylor, 5 N. J. L. 413; Den. v. Snitcher, 14 N. J. L. 53; Seddell v. Wills, 20 N. J. L. 223; Wilson v. Wilson, 46 N. J. L. 321; Den v. Schenck, 8 N. J. L. 29; Drummond v. Drummond, 26 N. J. Eq. 234; Den v. Allaire, 20 N. J. L. 6; Groves v. Cox, 40 N. J. L. 40; Fosdick v. Cornell, 1 John. 440; Jackson v. Blanshan, 3 John. 292; Wilkes v. Lion, 2 Cow. 333; Heard v. Horton, 1 Denio 165; Miller v. Macomb, 26 Wend. 229; Hill v. Hill, 2 Barb. 419; Hatfield v. Sneeden, 54 N. Y. 280; Pendleton v. Pendleton, 2 Murphy (N. C.) 82; Jones v. Spaight, 1 Carolina Law Rep. 157, 544; Taylor v. Maris, 90 N. C. 619; Buchanan v. Buchanan, 99 N. C. 308; Kelly v. Williams, 113 N. C. 437; Wright v. Brown, 116 N. C. 26; Parish v. Ferris, 6 Ohio St. 563; Niles v. Gray, 12 Ohio St. 320; Durfee v. MacNeil, 58 Ohio St. 238; Rowland v. Warren, 10 Ore. 127; Hauer v. Sheetz, 2 Binney 532; Toman v. Dunlop, 18 Pa. St. 72; Hill v. Hill, 74 Pa. St. 173; Mangum v. Piester, 16 S. C. 316; Gordon v. Gor-

don, 32 S. C. 563; Lewis v. Claiborne, 5 Yerg. 369; Booker v. Booker, 5 Hump. 505; Stone v. Maney, 3 Tenn. Chan. 731; Brown v. Brown, 86 Tenn. 277; Armstrong v. Douglas, 89 Tenn. 219; Randall v. Josselyn, 59 Vt. 557; Bells v. Gillespie, 5 Rand. 273; Randolph v. Wright, 81 Va. 608; Tomlinson v. Nickell, 24 W. Va. 148; Jackson v. Chew, 12 Wheat. 153; Jackson v. Kip, 2 Paine 366; Lippett v. Hopkins, 1 Gall. 454; Abbott v. Essex Company, 18 How. 202; Pells v. Brown, 2 Cro. Jac. 590; Barker v. Suretees, 2 Strange 1175; Porter v. Bradley, 3 T. R. 143; Roe v. Jeffrey, 7 T. R. 589; Doe v. Wetton, 2 Bos. & P. 324; Doe v. Frost, 3 Barn. & Ald. 546; Ex parte Davies, 9 E. L. & E. 88.

*Charles Cummings Collins* also for appellant.

(1) (a) The statute of wills requires all courts in the execution of last wills to have due regard to the direction of the will and the true intent and meaning of the testator in all matters brought before them. R. S. 1899, sec. 4650. (b) This is also the prevailing principle of construction irrespective of statute. Yocum v. Siler, 160 Mo. 281; Fanning v. Doan, 128 Mo. 323; Emerson v. Hughes, 110 Mo. 630; Cook v. Couch, 100 Mo. 29; Wead v. Gray, 78 Mo. 59. (c) And technical rules must yield to the obvious meaning of the testator; all other rules of construction are subordinate. Small v. Field, 102 Mo. 104; Crecilius v. Horst, 78 Mo. 566; Suydam v. Thayer, 94 Mo. 49. (d) If the intention of the testator is not manifest from the will the court is justified in taking into consideration any surrounding circumstances that will throw light on such intention. Roberts v. Crume, 173 Mo. 572; Reinders v. Koppelman, 94 Mo. 338; McMillan v. Farrow, 141 Mo. 62; Rothwell v. Jamison, 147 Mo. 601; Schorr v. Carter, 120 Mo. 415. (e) Of two equally probable interpretations of a will, that shall be adopted which prefers those nearest to and known by testator. Schouler on Wills, sec. 479; Down-

ing v. Bain, 24 Ga. 372; Wood v. Mitchell, 92 N. Y. 375; Fanning v. Doan, 128 Mo. 323. (f) The words "heirs and assigns forever" are words of limitation, indicating an intention to pass a fee simple. Under our statute they are not necessary for that purpose, but they are technically apt and proper, and as such are still in common use and recognized by the courts as appropriate terms for that purpose. Roberts v. Crume, 173 Mo. 572; Chew v. Keller, 100 Mo. 369; Emerson v. Hughes, 110 Mo. 627; Redman v. Barger, 118 Mo. 574; Fanning v. Doan, 128 Mo. 330; Jarboe v. Hey, 122 Mo. 341; Clarkson v. Clarkson, 125 Mo. 381. (2) No life estate was either expressly or impliedly devised to Michael J. Gannon, Jr., and Joseph E. Gannon. (3) Testator devised an absolute estate to these two sons, who had a legal right to convey their fee simple title. An estate in fee simple can not be impaired, qualified or cut down by subsequent clause of the will, except by words affirmatively as strong as those which conveyed the estate; the subsequent clause must be as clear and decisive in the expression of an intention to so limit or qualify the estate as is the first clause devising the estate. Yocum v. Siler, 160 Mo. 281; Roth v. Rauschenbusch, 173 Mo. 582; Roberts v. Crume, 173 Mo. 572; Cook v. Couch, 100 Mo. 29; Wead v. Gray, 78 Mo. 59; Chew v. Keller, 109 Mo. 362; Emerson v. Hughes, 110 Mo. 630; State ex rel. v. Tolson, 73 Mo. 320; Green v. Sutton, 50 Mo. 186; Allen v. Claybrook, 58 Mo. 131; Lewis v. Pitman, 101 Mo. 291; Reinders v. Koppelman, 68 Mo. 491; McTigue v. McTigue, 116 Mo. 138; Rothwell v. Jamison, 147 Mo. 602; Norcum v. D'Oench, 17 Mo. 98; Rubey v. Barnett, 12 Mo. 3; Tremmel v. Kleinboldt, 75 Mo. 258; Howard v. Carusi, 109 U. S. 575; Roberts v. Lewis, 104 U. S. 945; Ide v. Ide, 5 Mass. 500; Dannell v. Hart, 137 Mass. 218; Parker v. Iasigi, 128 Mass. 416; Clark v. Luepp, 88 N. Y. 228; Roseboom v. Roseboom, 81 N. Y. 356; Freeman v. Coit, 96 N. Y. 63; Byrnes v. Stillwell, 103 N. Y. 453; Temple v. Sam-

mis, 97 N. Y. 526; Haight v. Pine, 39 N. Y. S. 511; Banzer v. Banzer, 32 N. Y. S. 803; Campbell v. Beaumont, 91 N. Y. 464; Den v. Snitcher, 10 N. J. L. 63; William v. Bradley, 3 Allen 282; Hoxsey v. Hoxsey, 37 N. J. Eq. 24; Pells v. Brown, 2 Cro. Jac. 590; Johnson v. Cook, 12 Ch. Div. 653; Dodson v. Hay, 3 Brown, Ch. C. 404; Jackson v. Bull, 10 John. 19; Jackson v. Robins, 15 John. 169, 16 John. 537; Lamb v. Eames, L. R. 10 Eq. Cas. 267; Thornhill v. Clark, 2 Clark & Finn 22; 4 Kent, Com. (10 Ed.), 270; 1 Jarman on Wills, 552; 2 Redfield on Wills, 277; Schouler on Wills, 468, 474, 478. The decisions favoring a life estate in such cases are based upon express limitations for life, or upon limitation expressed in words affirmatively as strong as those which convey the estate, or upon limitation for life with power of appointment over fee which was not exercised. Schorr v. Carter, 120 Mo. 409; Chiles v. Bartleson, 21 Mo. 344; Harbison v. James, 90 Mo. 411; Munro v. Collins, 95 Mo. 33; Redman v. Barger, 118 Mo. 568; McMillan v. Farrow, 141 Mo. 63; Bean v. Kenmuir, 86 Mo. 666; Walton v. Drumtra, 152 Mo. 489. Besides, these cases in which the court has construed the estate of first taker to be a life estate, have little bearing on this question, which is predicated on the proposition that the first taker takes an unconditional fee, and upon the attempt to limit another fee after the first. (4) No estate tail can be created by implication. The words "dying without issue," should be construed as heirs or issue living at the time of the death of the ancestor. No implication of an estate tail can arise from words purporting a failure of issue, unless the intention to use the phrase as denoting an indefinite failure of issue be distinctly marked, and the donee will take an estate in fee simple subject to an executory devise in the event of dying without leaving issue at his death. Jarman on Wills, 521; Yocum v. Siler, 160 Mo. 281; Naylor v. Goodman, 109 Mo. 550; Roth v. Rauschenbusch, 173 Mo. 582; Den v.

Snitcher, 14 N. J. L. 53; Roseboom v. Roseboom, 81 N. Y. 356; Clark v. Luepp, 88 N. Y. 228; Lambe v. Eames, L. R. 10 Eq. Cas. 206; Thornhill v. Hall, 2 Clark & Finn. 22; R. S. 1879, sec. 4004.

*Henry T. Kent* and *James W. Williams* for respondents.

(1) Joseph E. Gannon and Michael J. Gannon, Jr., the devisees under the will of Michael Gannon, Sr., of the property sued for under the fourth clause of the will, took, what at common law would have been, an estate tail, and by the Revised Statutes of Missouri (secs. 4592, 4593, 4594), the estate tail so created became a life estate in Joseph and Michael with remainder in fee to their children, the plaintiffs. R. S. 1899, secs. 4592, 4593, 4594; Ellis v. Ellis, 9 East 383; Notingham v. Jennings, 1 Pr. Williams 23; Lewis v. Waters, 6 East 336; Chadock v. Cooley, 3 Cro. Jac. 695; Biss v. Smith, 2 Hurlstone Norman's Rep. 105; 6 Eng. Ency. of Laws of England, p. 166; Morgan v. Morgan, 39 L. Chy. 483; 6 New English Case Law Dig., p. 234; 1 Wash. on Real Prop. (5 Ed.), p. 104; 29 Am. Ency. of Law, p. 434; Allen v. Trustees, 102 Mass. 264; Gifford v. Choate, 100 Mass. 344; Parker v. Parker, 5 Met. 134; Nightingale v. Burrill, 15 Pick. 104; Tate v. Tally, 3 Call (Va.) 355; Carter v. Tyler, 1 Call 165; Bells v. Gillespie, 5 Rand. 273; Farrar v. Christy, 24 Mo. 468; Harbison v. Swan, 58 Mo. 147; Thompson v. Craig, 64 Mo. 312; Emerson v. Hughes, 110 Mo. 627; Goodman v. Simmons, 113 Mo. 122; Bone v. Tyrrell, 113 Mo. 175; Wood v. Kice, 103 Mo. 329; Reed v. Lane, 122 Mo. 314; Frame v. Humphreys, 164 Mo. 336. (2) Reading the will from its four corners, the plain and unmistakable intent of the testator was to preserve his estate in his family, and to that end his sons were to have life estates, with the remainder to their issue or children. That if one of the sons died leaving no issue, the brother

was to have his share, but, on the contrary, if the son died leaving issue or children, the latter became vested with the fee. The third contingency was that if both sons, Michael and Joseph, died without leaving issue, the testator's brothers and sisters, the surviving heirs, with exception of John T. Gannon, were to have the property devised. This contingency never happened, since both sons died leaving issue. Any other interpretation of the will expressly violates the clear intent of the testator, which was to provide, first for his sons for life, then for his grandchildren, and if no grandchildren then it was to pass to his surviving heirs.

GANTT, J.—This is an action of ejectment. Michael J. Gannon is the common source of title to the lot in suit.

Upon the construction of the fourth clause of the will of Michael J. Gannon the rights of both sides to this controversy depend. The said clause is in these words:

"Fourth. I give, devise and bequeath unto my two sons, Michael J. Gannon, Jr., and Joseph E. Gannon and unto their heirs and assigns forever, my farm lying and being in the county of St. Louis and State of Missouri which lies in the southern limits of Kirkwood, containing eighty acres, be the same more or less. It is my will that the same shall not be sold, at least not before the younger of the two, that is, Joseph E. Gannon, becomes of lawful age; and should either of them die without issue, then the survivor, his heirs and assigns to take, own and have the part and portion hereby bequeathed to the one so dying. And in the event both should die without leaving any issue, then it is my will that my surviving heirs (with the exception of my son, John T. Gannon, who has had his share) shall have such property like and like."

Following the cardinal rule of construction it is our duty to ascertain, if possible, the intention of the

testator, and in so doing, mere technical rules must yield to the obvious intent and purpose of the testator. Among the more,important canons of construction that have uniformly found favor in this court is the rule that when the words of a will at the outset clearly indicate a disposition by the testator to give the entire estate absolutely to the first donee or devisee, the estate will not be cut down to a less estate by subsequent or ambiguous words inferential in their intent. [Small v. Field, 102 Mo. 104.] There are some propositions in the construction of this will that are or ought to be free of doubt. First, by the words, ''I give, devise and bequeath to my two sons, Michael J. Gannon, Jr., and Joseph E. Gannon and unto their heirs and assigns forever, my farm,'' etc. In the absence of qualifying words or subsequent limitations, a fee simple absolute was given to these two sons to the tract in question. This is so by the most rigid technical rules of the common law and everywhere recognized by the English and American courts, and unembarrassed by technical rules and refinements, the ordinary man would unhesitatingly say that this was the plain meaning of the testator. On this proposition we are all agreed and indeed it is not seriously controverted by counsel. It is true that it is urged that these words, ''and unto his heirs and assigns forever,'' were not necessary, since our statute has dispensed with the use of the word ''heirs'' in conveying or devising an estate of inheritance, and it is argued that by the use of these unnecessary words the testator evinces a lack of confidence in the force of the words previously used and for that reason casts a doubt on their meaning. We are unable to concur in such a view. While it is true that our statute no longer requires the word ''heirs'' to pass a fee simple, the use of these words in no manner casts any doubt upon the intention of a grantor or devisor who uses them to grant or devise a fee simple. It is doubtful whether any competent or skillful conveyancer ever dispenses with them in con-

veying a fee. Why should the use of words so long approved and so absolutely necessary at common law to effectuate such a purpose indicate a different purpose merely because the statute permits other and less words to have the same effect? Notwithstanding our statute has dispensed with the word "heirs" in devising a fee, this court has often commended their use. In Chew v. Keller, 100 Mo. l. c. 370, Judge BLACK, speaking for this court, held that the words "to them and their heirs forever" created a fee simple, saying: "Stronger language could not have been used to show and disclose a purpose and intent to confer upon Levin Baker and the other named persons an absolute and unconditional fee. The estate is given to '*them and their heirs forever*.' This expression, though unnecessary to create a fee, is an appropriate one for that purpose; and that the word 'heirs' is here used in its ordinary legal sense as one of limitation only can not be doubted."

When in addition to the words, "unto them and their heirs forever," the testator adds the significant words "and assigns," it seems to us that instead of suggesting a doubt of his intention, no more suitable language could have been chosen by Michael Gannon to give his said sons an absolute fee simple and they *emphasize* his intention to give them his whole estate in said tract. [Wolfer v. Hemmer, 144 Ill. 554.] Neither does the use of the word "bequeath" in any manner weaken the force of the other words. "Bequeath" has been judicially construed by many of the ablest courts of this country to be synonymous with devise when used with reference to a gift of real estate. [Dow v. Dow, 36 Maine 211; Laing v. Barbour, 119 Mass. 523, and cases cited.] In this court it has been so held. [Shumate v. Bailey, 110 Mo. 411; Yocum v. Siler, 160 Mo. 281.]

In Greenwood v. Verdon, 1 Kay & J. 74, before Sir W. P. WOOD, Vice Chancellor, the gift was to his son, John Verdon, and to his heirs and assigns forever, and

from and after the death of John without issue, then over to the surviving legatees. The Vice Chancellor said: "There are several points about this will which do not admit of question. First, there is clearly an estate in fee simple limited to John Verdon, for the limitation is not merely to him and his heirs, *but to his heirs and assigns forever*. The first limitation here being not only to the son 'and his heirs' which has often been restrained to a particular line of heirs, but the limitation is in the *largest words,* 'to him, *his heirs and assigns forever.'* I could not rely upon those words alone, but as they are used and I have to consider whether or not the estate so limited is cut down to an estate tail, I have to construe the effect of those words upon the subsequent gift on the death of John Verdon without issue." After reviewing many English cases the Vice Chancellor summed up as follows: "The answer to this special case must be, that, under the will of John Verdon, John Verdon, the son, took an estate in fee simple, subject to be defeated by an executory devise in the event of his dying without issue living at the death of the last surviving legatee, and there being issue living at that period, the estate in fee became absolute."

These views sufficiently indicate our opinion that the first sentence of the fourth clause of the will clearly and in unambiguous language devised a fee in this tract to the two sons. So that we must reject the argument that a fee simple was not created by these words.

But it is argued with great earnestness by counsel that while these words standing alone might be sufficient to create a fee simple, yet when considered in connection with the subsequent words of the will they in fact create a fee tail.

Let us consider then the words "unto them and their heirs and assigns forever," with the subsequent clauses of this fourth item of the will. Did the testator intend to give his said two sons an absolute fee, or a fee defeasible upon the death of both without issue, or

did he intend to create an estate tail? Two views are maintained by defendant. The first is that by the gift of an absolute fee in most appropriate language in the first instance and understanding and intending thereby that they had the absolute power of aliening the land thus devised to them, when he added the clause, "It is my will that the same shall not be sold, at least not before the younger of the two, Joseph E. Gannon, becomes of age," he gave and intended to give an additional power to sell when Joseph reached his majority. Keeping in mind, as we do, that he had already granted an estate to them to which the power of sale attached as a necessary incident and that he understood that he had done so, and that it was, therefore, his intention to do so, the clause restraining the sale until Joseph arrived at age must be construed and read as if he had said, "I give my said sons full power to sell and convey said land when Joseph, the younger of the two, becomes of lawful age." To our minds it seems absolutely clear that he understood he had already granted them a fee simple with the power to sell, and he only desired the land should not be sold during the minority of Joseph, but after that it was his will that no restraint should exist on their power to sell and convey. It is to be observed in this connection that the restriction is not to the sale of a mere life estate, but to a sale of the land itself. No such restriction was necessary if he had given them a mere life estate. We understand it is settled law that where an estate is devised to one and his heirs and assigns forever and there is added either by express words or by implication an absolute power of alienation, the limitation over is void. In our opinion the words of this restraining clause give an express power to sell, but if not there is clearly given such power by implication.

In 2 Redfield on Wills, p. 277, it is said: "It is a settled rule of American as well as English law, that when the first devisee has the absolute right to dispose

of the property in his own limited discretion, and not a mere power of appointment among certain specified persons or classes, an estate over is void, as being inconsistent with the first gift." Void as a remainder, because of the preceding fee, after which a remainder can not be limited. Void as an executory devise, because a valid executory devise can not subsist under an absolute power of disposition in the first taker. Thus Chancellor KENT says, vol. 4 (14 Ed.), 270: "If, therefore, there be an absolute power of disposition given by the will to the first taker, as if an estate be devised to A in fee, and if he dies possessed of the property without lawful issue, the remainder over, or remainder over the property which he, dying without heirs, should *leave*, or without *selling or devising* the same; in all such cases the remainder over is void as a remainder, because of the preceding fee; and it is void by way of executory devise, because the limitation is inconsistent with the absolute estate, or power of disposition expressly given or necessarily implied by the will." [Jones v. Bacon, 68 Maine 34; McKenzie's Appeal, 41 Conn. 607; Rona v. Meier, 47 Iowa 607; Kelley v. Meins, 135 Mass. 231, and cases cited; Howard v. Carusi, 109 U. S. 725; 2 Wash. Real Prop. (6 Ed), 667; Roth v. Rauschenbusch, 173 Mo. 582; Wolfer v. Hemmer, 144 Ill. 554; Ball v. Hancock's Admr., 82 Ky. 107; Combs v. Combs, 67 Md. 11; Hoxsey v. Hoxsey, 37 N. J. Eq. 21; Wead v. Gray, 78 Mo. 59; Van Horne v. Campbell, 100 N. Y. 287.]

If we are right in this position plaintiffs can not recover. Let us next inquire whether an estate in fee tail was intended to be created in these two sons and the heirs of their body. And first, was there an estate tail created by express words? The contention is that the word "heirs" expressed or implied is just as essential to the creation of an estate tail as of an estate in fee simple, the difference being that in the creation of a fee

tail a particular class or line of heirs must be indicated, while in fee simple it is to the heirs general.

As understood by all lawyers what is known as fee-tail estates had their origin in the statute 13 Ed. 1, ch. 1 (1285). The name fee tail was borrowed from the feudists amongst whom it signified any mutilated or truncated inheritance from which the heirs general were cut off, or as some say, because ownership of the subject was cut in two parts, one going to the donee and the *heirs of his body* and the other remaining as a reversion in the donor. [2 Black. Com., 112 n. (M.); 1 Thos. Coke Litt., 512-525.] The familiar forms of creating such estates were "grant to A and the *heirs* of his body;" or "grant to A and the heirs male of his body;" or "grant to A and the heirs male of his body on Mary, his now wife, to be begotten." [2 Bl. Com., 113 and 114; 2 Minor's Insts. 80.]

In conveyances *inter vivos* the word "heirs" was necessary to create the estate, whereas, in wills, any words manifesting the testator's intent were suffcient; thus, a grant *by deed* to a man and his issue of his body or to his issue or to his offspring, would pass only a life estate for want of proper words of inheritance, whereas in *a will* the same words would create an estate tail. [2 Bl. Com., 115 and 116.]

In all the foregoing examples it is to be observed that the grant or devise is to the heirs of the body or to the issue or offspring, and these are cases wherein by express words a fee tail is created. Leaving out for the present any consideration of the creation of estates tail by implication, it is too obvious for serious discussion that there is no express gift by the testator to the heirs of the bodies of Michael J. Gannon Jr., and Joseph nor to their issue. But the contention is that the word "heirs" is explained by the subsequent use of the word "issue" and they must be read together and so used they are synonymous with "heirs of his or their bodies," and thus interpreting the words "unto them

and their heirs and assigns," as "heirs of their bodies," an estate tail is created by express words. To us this seems a most unnatural and forced construction of the words "unto their heirs and assigns forever," words which, we have already seen, have a settled meaning in the law and carry on their face a clear unambiguous intention of passing or creating a fee simple.

In order to reach this conclusion the word "assigns" in said clause must be stricken out of the will, and utterly disregarded, in the face of the settled rule that in construing any document, deed or will we must give effect to every word if it be possible without contravening the intention of the grantor or devisor. In addition to striking out the word "assigns" we must interpolate the word "heirs of his or their bodies," and both to reach an intention in conflict with a plain and unambiguous intention to devise a fee simple to these two sons. To accomplish this, the first devise given to the natural objects of the testator's bounty is made secondary to the ulterior and contingent devise over, found in a subsequent clause. We do not question that courts may transpose the words of a will if necessary to reach the true intention of the testator, but we insist that it must be presumed that the testator used the words he intended to use in their plain and ordinarily accepted legal sense, and we are not justified in interpolating other words and words of entirely different import. By resorting to such a course we import an ambiguity in the will and then substitute words which the testator did not use to remove that ambiguity. We submit there is no occasion for resorting to such refinements to avoid the force and effect of a plain devise of a fee simple to the two sons, and hence we say that there is nothing in the language of this will to justify the construction that an estate tail was limited by express words. Such a construction is only reached because the plain and ordinary signification of the words "to them and their heirs and assigns forever" puts them in a sup-

posed conflict with the subsequent contingent disposition of the land in suit. But there is no such conflict— the obvious purpose was to give the two sons a fee simple in the land, defeasible if they should die without issue or children living at the death of the survivor of the two sons named, and if they should die leaving no issue living at the death of either or both, then an executory devise over to the other heirs of the testator, a disposition entirely legal, if the testator had not already annexed to the fee devised to them the absolute power of disposal, but as that contingency never happened and never can happen, because both of said sons left children, the plaintiffs in this case, surviving them, the fee simple became absolute in the two sons and their grantees, the defendant and others, even if the power of sale was not superadded.

But we are now brought to the further contention that a fee tail was devised by implication. We concede that under the statute *de donis* a fee tail may be created by implication, and in this case, if a fee tail is to be implied, it must be by construing the words ''dying without issue'' to mean an indefinite failure of issue, and that consequently the executory devise over is void for remoteness. Such was the case of Farrar v. Christy's Admrs., 24 Mo. 453. That was the construction of a deed made in 1832 in which the grant was ''to have and to hold the premises aforesaid with all the appurtenances thereto belonging to them and their heirs forever, upon condition that should either of the grantees herein named die without *legal heirs of their body,* the survivor shall inherit the whole of the property hereby conveyed; and should both die without leaving *heirs as aforesaid,* the property conveyed shall revert to the other legal heirs of the said William and Martha T.'' It was conceded that these words, ''should die without legal *heirs of their body,*'' created a fee tail by implication under the statute *de donis.* At the date of that decision, moreover, section 6 of chapter 32, Revised

Statutes 1845, had not been enacted, and the words "dying without issue" without further limitation at the time were held and construed by both the English and American courts to mean *an indefinite failure* of issue, and *by implication to create a fee tail* in the first taker or ancestor named. It is too plain for discussion that the majority of the court in Farrar v. Christy did not and could not have had section 6 of chapter 32, Revised Statutes 1845, under consideration in deciding that cause. Judge LEONARD dissented.

Harbison v. Swan, 58 Mo. 147, is also relied on as controlling the construction of this will. It is true that the will in that case was made in 1846 and the testator died in 1852, but it is to be observed that this court in deciding that case based its decision on Farrar v. Christy and the common law, and made no reference whatever to section 6 of chapter 32, Revised Statutes 1845, and it can not be said that said section was construed by the court. The will was construed with reference to the common law and the act of 1825 alone and the attention of the court was not called to the act of 1845 by counsel in the case. Moreover, there were no words in that will from which a power to sell could be implied, and in that respect it differs materially from the will under consideration.

Conceding that prior to the act of 1845 the words "dying without issue" had been construed to mean an indefinite failure of issue at any time, and that many of the courts of England and of this country held these words created an estate tail by *implication,* what effect is to be given these words since the act of 1845, section 6, chapter 32, went into effect? Obviously they were enacted to settle forever the construction to be placed upon the words "dying without heirs" or "without issue" *in the future* by our courts, and that they should not be construed in deeds and wills thereafter made to mean an indefinite failure of issue, and by implication to create estates tail, but henceforth they should be con-

strued to mean "heirs or issue living at the death of the person named as ancestor." Granting that if section 5 of the Act of 1845 stood alone those words would create an estate tail under the statute *de donis* and that the case of Farrar v. Christy, falling under the act of 1825, was properly decided, still it was competent for the Legislature to pass the Act of 1845, and thereby modify the Act of 1825, and in effect command that whereas these words had been held by the courts prior to the Act of 1845 to create a fee tail, yet in the future those words should no longer be held to mean an indefinite failure of issue, but a failure of issue living at the death of the ancestor named, and thereafter their use should not have the effect of creating a fee tail by implication, but that an executory devise over after these words should be good. If this is not its meaning, what effect is to be ascribed to this statute? The section on its face shows it was the work of a trained lawyer, familiar with the conflicting views of the courts of England and this country as to the meaning of the words, "dying without issue," and evinces a determination to settle by positive statutory enactment the meaning of those words in all future deeds and wills in this State, and that thereafter when the question arose as to whether these words created a fee tail under the statute *de donis*, they should be construed to mean "issue living at the death of the ancestor" named, and no implication of a fee tail should arise to be at once destroyed by converting it into a life estate. If we do not so construe this section 6 of chapter 32 of the Act of 1845, we in effect deny its authority, which we have no right or power to do. But we are told that fee tails never have existed in this State, having been abolished in 1816, when Missouri was a Territory, and, therefore, we are not to inquire whether these words create an estate in fee tail in Missouri since the Act of 1845, as there can be no estates tail in Missouri, but whether by the com-

mon law it was a case wherein the devisees would have been seized in fee tail.

Chancellor KENT in his Commentaries (14 Ed.), vol. 4, p. 280, states that in Virginia by statute in 1819 and in Mississippi by Revised Code of 1824 and in North Carolina by statute in 1827, the rule in construction of devises as well as deeds, with contingent limitations depending upon the dying of a person without heirs or without heirs of the body or issues or issue of the body or children, was declared to be that "the limitation should take effect on such dying without heirs or issue living at the time of the death of the first taker or born within ten months thereafter"—and says it is further declared "that when a remainder shall be limited to take effect upon the death of any person without heirs or without issue the word 'heirs' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor." The great chancellor then adds: "These provisions sweep away, at once, the whole mass of English and American adjudications on the meaning, force, and effect of such limitations. The statute speaks so peremptorily as to the construction which it prescribes, that the courts, may not, perhaps, hereafter, feel themselves at liberty to disregard the direction, even though other parts of the will should contain evidence of an intention not to fix the period of the devisee's death for the contingency to happen, and that the testator had reference to the extinction of the posterity of the devisee, though that event might not happen until long after the death of the first taker. They might be led to regard any such other intent, collected from the whole will, if such a case should happen, not to be consistent with the positive rule of construction given by the statute to the words 'heirs' and 'issue.' Yet, when we consider the endless discussions, and painful learning, and still more painful collisions of opinion, which have accomplished the history of this vexatious subject, it is impossible not to feel some relief,

and to look even with complacency, at the final settle-ment, in any way, of the litigious question by legisla-tive enactment.''

Accordingly we have a statute in this State almost *in totidem verbis* with the statutes mentioned by Chan-cellor KENT and it seems impossible to escape the logic of that distinguished jurist and chancellor that the courts are bound by this statutory construction, and accordingly when we find a devise, as in this case, of a fee simple to the first taker by apt, appropriate and long approved words, and thereafter a gift over on condition that he die without issue, ''dying without issue'' must be held to mean dying without issue living at his death, and, therefore, a definite failure of issue is provided, and the executory devise over is good, and the first taker takes a fee defeasible upon his dying without issue living at his death. If he die with such issue liv-ing, the estate in fee is absolute. If he die without issue living at his death, it goes over to the executory devisee to whom it is limited.

It is true that estates tail have never existed in this State as they were abolished in 1816 by the Terri-torial act of that year, and the act of 1825 provided ''that in cases where by the common law any person or persons who would then be or might hereafter become seized in fee tail,'' such person was to have a life estate only and the remainder pass in fee simple to the one next in line, and the act of 1845 practically continued that provision, but correctly referred estates tail to the statute *de donis*. The estates tail disposed of by those enactments were such as were defined by the statute *de donis*, but surely it will not be contended that legis-lative power was exhausted by those acts. By the same legislative power it was entirely competent by subse-quent enactment to declare what meaning should be given by the courts to certain words when thereafter used in wills and deeds, and this is what was done by section 6 of the act of 1845 passed contemporaneously

with the enactment of section 5, for the first time commanding and directing that if the words "dying without heirs or heirs of the body" or "issue" should be used those words should be construed to mean "dying without issue living at the time of the death of the person named as ancestor." If the Legislature had the power to pass that statute, and this will not be questioned, the courts must read that statute into all instruments executed since its passage and containing those words. The only question left for the courts to determine is whether an instrument construed as the Legislature has directed that it shall be done, would create an estate tail under the statute *de donis,* if so read. By all the canons of construction sections 5 and 6 of the act of 1845 (now secs. 4592 and 4593, R. S. 1899) must be read together and when so read they direct that in cases "where by the common or statute law of England any person or persons would now or might hereafter become seized in fee tail such person shall only have a life estate with remainder in fee simple to the one next in line," but the courts in determining whether an instrument would have created a fee tail at common law shall construe the words "dying without issue" when used in such instrument to mean "dying without issue living at the death of the person named as ancestor." There is no conflict between the two sections and both can be made effective. The one abolishes estates tail and the other prescribes the meaning and construction of certain words for the government of our courts in determining whether an estate tail by implication is created by the instrument to be construed. In this connection it is well to note that other States have adopted provisions similar to ours in this respect, notably New York, New Jersey and Michigan.

Jarman on Wills, vol. 1 (6 Ed.), p. 521, discussing the creation of estates tail in England by implication from the use of the words "dying without issue," says:

"No implication of an estate tail can arise from

words importing a failure of issue, in a will made or republished since the year 1837, unless an intention to use the phrase as denoting an indefinite. failure of issue be very distinctly marked, as the statute, 1 Vict. c. 26, s. 29, provides that such words shall be held to mean a failure of issue in the lifetime or at the death of the person referred to, unless a contrary intention shall appear by the will.

"Under this clause, coupled with the preceding section, which makes a devise confer an estate in fee without words of inheritance, it will generally happen, in cases in which, according to the old law, the prior devisee would have been tenant in tail, by the effect of words devising over the property on the failure of his issue, that he will, under the new rule of construction, take an estate in fee simple, subject to an executory devise in the event of his dying without leaving issue at his death; and this, no doubt, was the effect contemplated and designed by the Legislature."

Underhill on Wills, vol. 2, p. 870, after a full discussion of the same subject, says:

"The doctrine of the creation of an estate tail by implication, above explained, has no application whatever where an estate is a fee simple, with a limitation over upon failure of issue, and it appears either from the will itself, *or where the common law rule is modified by statute,* that the failure of issue referred to is the failure of issue living at the death of the first taker. If the primary devisee has an estate in fee which is defeasible upon a definite failure, i. e., of issue living at his death, it becomes indefeasible in him on his having issue who survive him, and he may provide for such issue by devising the fee to them."

Accordingly we hold that the statute of 1845 read into this will renders it impossible that the words "dying without issue" should have the effect of creating an estate tail and thereby cutting down the estates of

Michael J. Gannon, Jr., and Joseph to life estates only, remainder in fee to plaintiffs, their children.

But independently of the statute there is much room for holding that even under the English and American decisions the will contains enough to show. an intention on the part of the testator that the words "dying without issue" referred to issue living at the death of the survivor of said two sons.

If the language of the will is susceptible of a construction that will make it apply to a definite failure of issue that construction should be adopted. The first limitation is to the survivor of these two sons, meaning clearly issue living at the death of the one of these two sons who should die first, and the next limitation is, "and in the event both should die without *leaving* any issue, then it is my will that my *surviving* heirs (with the exception of my son, John T. Gannon, who has had his share) shall have such property like and like."

Surviving when? Manifestly when both die without *leaving* any issue. The words "leaving" and "surviving" refer in point of time to the death of the survivor of the two sons. Then, too, John T. Gannon who was living at the time the will was made is excluded from participation, showing in this additional manner the time in the mind of the testator.

But it is also said that the word "remainder" in section 6, chapter 32, Revised Statutes 1845, is a technical word and does not include an executory devise. We think this is too narrow a construction to place upon this word in the connection in which it is used. The preceding section 5 in that act refers alike to "conveyances or devises" and section 6 speaks of remainders limited by deed or "*otherwise.*" The word "remainder" is often used by textwriters to include an "executory devise," and this court has construed this word in this identical section 6 of the act of 1845 to have that significance.

Fearne on Remainders, vol. 2, p. 159, says: "The

term remainder is sometimes used in a lax sense, to denote any kind of subsequent interest, or the limitation thereof.''

Chancellor KENT in his Commentaries, vol. 4 (14 Ed.), p. 274, says: ''A devise in fee with remainder over upon an indefinite failure of issue, is an estate tail; and in order to support the *remainder over* as an *executory devise,* and to get rid of the limitation as an estate tail, the courts have frequently laid hold of slender circumstances in a will, to elude or escape the authority of adjudged cases.'' Blackstone uses the words as synonymous. [2 Blackstone, 173.] But in Sherman v. Sherman, 3 Barb. 385, the statute of New York, R. S. 1829, vol. 1, p. 724, sec. 22, which our Legislature evidently adopted when it enacted sec. 6, ch. 32, Rev. Stat. 1845, came before the court for construction and it was held that the word ''remainder'' included ''executory devise'' and the limitation over was held to be a good executory devise, and, moreover, that the statutory definition and not the common law meaning of the words ''dying without heirs of his body or without issue'' should control. That statute was afterwards adopted by Michigan, and in Mullreed v. Clark, 68 N. W. 138, came under review by the Supreme Court, and it was held to govern an executory devise, and that decision is peculiarly applicable here because in that case the devise was to James Phillips, but if he should die without heirs then over, and the court held that ''James Phillips took a *fee* defeasible at his death without issue living at that time.'' If he had issue then living, the fee became absolute. If none then living, it went over to the devisees named in the will. But the point is that the word *remainder* applied in full force to executory devises.

But in Faust's Admrx. v. Birner, 30 Mo. 417, in construing the will of John Birner this court held that the words ''dying without issue'' must, in this State since the Revised Statutes of 1845 went into effect, be con-

strued to mean dying without issue living at the death of the ancestor named, and that act applied to executory devises, saying, "this is a good executory devise to the brothers."

Again in Naylor v. Godman, 109 Mo. 550, this court through Judge SHERWOOD quoted this identical section 6 of the act of 1845 and held it applied to an executory devise and it was so held in Yocum v. Siler, 160 Mo. 289.

To sum up, then, we hold that the will of Michael Gannon does not create an estate tail by express words; that there is no express limitation therein to "the heirs of the body" or to the issue of the two sons, Michael and Joseph; that it does not create an estate tail by implication, because both by the language of the will and especially by the positive command of the statute of 1845, the words "die without issue" mean dying without issue living at the death of said Michael and Joseph, and therefore mean a definite failure of issue, and hence no fee tail can be implied from their use, and, finally, that by the said fourth clause of the will the said two sons took a fee simple subject to be defeated upon their dying without issue living at their death, and as both died leaving children, the plaintiffs herein, the contingency upon which their fee simple was to be defeated never happened and never can happen, and their estate in fee became absolute, and their warranty deeds conveyed to defendants' grantors the fee simple title. A different conclusion was reached in the construction of this same clause in the will of Michael J. Gannon by Division One of this court in Edward Gannon et al. v. Gustave Pauk et al. at the October term of this court (reported at page 265 of this volume), but upon reconsideration of the said clause in this case by the Court in Banc, we are not satisfied with the opinion of Division One construing said clause, and must decline to accept it as the proper construction of this will, and the judgment of the circuit court must be and is reversed.

*Robinson, C. J., Burgess* and *Fox, JJ.,* concur; *Brace, Marshall* and *Valliant, JJ.,* dissent, and express their views in an opinion by *Valliant, J.*

MEMORANDUM OF DISSENTING OPINION.

VALLIANT, J.—The facts in this case are in all respects identical with those in the case of Gannon v. Pauk recently decided in Division One, and reported at page 265 of this volume, except that a different part of the same eighty-acre tract is the subject of this suit and except also that the defendants in this are not the same as in that. Both cases depend on the interpretation to be placed on the fourth clause of the Gannon will. As the dissenting opinion in this case, in which *Brace, Marshall* and *Valliant, JJ.,* concur, is substantially the same as the opinion of the court in Gannon v. Pauk, it is deemed by the writer of the dissenting opinion unnecessary to do more than refer to the opinion in the Pauk case for an understanding of the views of the dissenting judges.