# GANNON et al. v. PAUK et al., Appellants.

### In Banc, December 18, 1906.

1. **WILL: Alienation and Perpetuities.** The law looks graciously upon the power of alienation donated to a devisee, and (by statute) turns a cold face towards perpetuities and the tieing up of landed properties by entailment.

2. ————: **Power of Alienation: Limitation Over: This Will.** A power of full alienation of the fee in the first taker under the will, even if he take and hold as a life tenant only, when fully executed, cuts off a limitation over to a remainderman or executory devisee. So that, where a testator gave, devised and bequeathed land to two sons "and unto their heirs and assigns forever," and provided that "the same shall not be sold, at least not before the younger of the two becomes of lawful age; and should either of them die without issue then the survivor to take and own the part hereby bequeathed to the one so dying," and in another clause stated, "It is my will that none of my real estate herein devised be sold until the youngest in each bequest and devise respectively becomes of lawful age, and that until such time my executrix in such capacity shall lease the same," the will gave the sons power to dispose of the land, and both having executed the power by executing warranty deeds conveying the land to defendants' grantors, and both having died leaving children, their deed conveyed the title, and cut off the limitation over.

3. ————: ————: **The Word Assigns.** The word "assigns" used in this will supports the view that the testator meant to vest the sons with power to dispose of the land.

4. ————: ————: **Negative Pregnant.** The power of alienation in this will (that the land given the sons was not to be sold until the youngest became of age) is to be found in the language used, according to the doctrine of negative pregnant, that is, a negative implying or pregnant with an affirmative.

5. ————: **Fee Tail Estate: Created By Implication.** In creating a fee tail estate by implication and inference, the implication should be a necessary implication, free from uncertainty, and the inference should be an inexorable one.

6. ————: ————: ————: **Clear Devise: Subsequent Ambiguous Words.** Where a clear devise of a fee simple estate is made by the initial clause of the devise, it cannot be cut down to a less estate by the use of subsequent ambiguous words inferential in their intent; in such case no estate tail is created by necessary implication.

7. ————: ————: ————: **Caution Imposed by Statutes.** Since an estate in fee tail when brought into existence by a will or

deed is instantly struck down by the law and another sub-
stituted for it, courts should proceed with great caution and
hesitancy in creating a fee tail estate by implication, and should
not do so at all unless coerced thereto by unambiguous words
creating such an estate by necessary implication.

8. **FEE TAIL BY IMPLICATION:** Contingency that Cannot Hap-
pen: Fee Simple. The fourth clause of the will reads: "I give,
devise and bequeath unto my two sons, Michael J. and Joseph
E., and unto their heirs and assigns forever, my farm. . . . It
is my will that the same shall not be sold, at least not before
the younger of the two, that is, Joseph E., becomes of lawful
age; and should either of them die without issue then the sur-
vivor, his heirs or assigns to take, own and have the part and
portion hereby bequeathed to the one dying. And in the event
both should die without leaving any issue, then it is my will
that my surviving heirs shall have such property, like and like."
Both sons died leaving children, and they are plaintiffs, seeking
to recover from those who hold under deeds made by the sons,
now deceased. *Held,* that there was no estate tail created by
necessary implication by this clause of the will, that there was
a fee simple estate devised by it to the two sons, and that there
was a contingency upon the happening of which that fee simple
estate might be defeated, to-wit, the contingency of the sons
dying without leaving children, but that contingency can never
happen, because both died leaving children.

Appeal from St. Louis County Circuit Court.—*Hon.*
*John W. McElhinney,* Judge.

REVERSED AND REMANDED (*with directions*).

*T. K. Skinker* and *Charles Cummings Collins* for
appellants.

(1) The construction put upon the Gannon will by
the court in Banc should have been accepted by the
trial court, and should not be accepted as controlling
and the judgment in this case should be reversed so as
to conform to that construction. (a) By the trial court:
Bank v. Dakin, 8 Hun 431; 1 N. Y. Rev. Stat. 1875, p.
93, sec. 4; p. 98, sec. 28; Constitution N. Y., art. 6;
preface to 44 N. Y. Reports; Bigelow v. Tilden, 52
N. Y. App. Div. 390. (b) By Division No. 1 of this
court: R. S. 1899, p. 94, secs. 1, 4; R. S. U. S., sec. 709;
Ex parte Conrades, 185 Mo. 411; Schafer v. Railroad,
144 Mo. 170; Wilden v. McAllister, 178 Mo. 732;
Rodgers v. Fire Ins. Co., 186 Mo. 248. (2) The will
conferred upon the two sons, Michael, Jr., and Joseph,

a fee simple, coupled with an absolute power of alienation. For this reason the devise over, under which the plaintiffs claim, is void. Or, at the least, it conferred upon the two sons a fee simple, determinable, as to each, upon his dying without issue living at the time of his death; and as they both died, leaving issue, after having conveyed the land, their issue, the plaintiffs, have no interest in the land and cannot recover. Gannon v. Albright, 183 Mo. 238; Yocum v. Siler, 160 Mo. 281; Yocum v. Parker, 67 U. S. C. C. A. 227; Yocum v. Parker, 130 Fed. 722; Prosser v. Hardesty, 101 Mo. 593; Chew v. Keller, 100 Mo. 370; Roth v. Rauschenbusch, 173 Mo. 592; Naylor v. Godman, 109 Mo. 550; Farrar v. Christy, 24 Mo. 453; Harbison v. Swan, 58 Mo. 147; U. S. v. More, 3 Cranch 172; Cross v. Burke, 146 U. S. 82; Adams v. Railroad, 77 Miss. 278; 2 Underhill on Wills, sec. 650; Fearne on Remainders, p. 159; 4 Kent Com., p. 274; 2 Blackstone Com., p. 173; Sherman v. Sherman, 3 Barb. 383; Mulreed v. Clark, 110 Mich. 229; McRee v. Means, 34 Ala. 377; Miller v. Macomb, 26 Wend. 229; Ferris v. Gibson, 4 Edw. Ch. 707; Faust v. Birner, 30 Mo. 417.

*Henry T. Kent* and *James W. Williams* for respondents.

(1) Joseph E. Gannon and Michael J. Gannon, Jr., the devisees under the will of Michael Gannon, Sr., of the property sued for under the fourth clause of the will, took what at common law would have been an estate tail and by the Revised Statutes of Missouri (section 4592) the estate tail so created became a life estate in Joseph and Michael with remainder in fee to their children, the plaintiffs. R. S. 1899, secs. 4592, 4593, 4594; Ellis v. Ellis, 9 East 383; Notingham v. Jennings, 1 Pr. Williams 13; Biss v. Smith, 2 H. & N. 105; 6 Ency. Laws of England, p. 166; Morgan v. Morgan, 39 L. Chy. 483; 6 New English Case Law Dig., p. 234; 1 Washburn on Real Property (4 Ed.), p. 104; 29 Am. and Eng. Ency. Law 434; Allen v. Trus-

tees, 102 Mass. 264; Gifford v. Choate, 100 Mass. 344; Parker v. Parker, 5 Metcalf 134; Nightingale v. Burrill, 15 Pick. 104; Farrar v. Christy, 24 Mo. 468; Harbison v. Swan, 58 Mo. 147; Thompson v. Craig, 64 Mo. 312; Emerson v. Hughes, 110 Mo. 627; Goodman v. Simmons, 113 Mo. 122; Bone v. Tyrell, 113 Mo. 175; Wood v. Kice, 103 Mo. 329; Reed v. Lane, 122 Mo. 314; Frame v. Humphreys, 164 Mo. 336. (2) Where the word "heirs" by express words or natural intendment means "heirs of the body" or issue, and this is the natural construction of the will in a devise "to A. and his heirs," such a devise must be read as if to "A. and the heirs of his body" or "his issue," and an estate tail is thereby created. Preston on Estate, 473, et seq., and 528; Waddell v. Waddell, 99 Mo. 345. (3) If the act of 1845 is to be read into section 4592, Revised Statutes 1899, so as to make the words "dying without issue" mean issue living at the death of the ancestor —then the "issue" is equivalent to "children" and the words "issue" or "children" are synonymous with the word "heirs" in the first clause, so the devise would be "to Michael and Joseph E. Gannon and their children," which would create life estates in Michael and Joseph with remainder in fee to the children. Cross v. Hoch, 149 Mo. 330. (4) The construction of the will in the opinion in Gannon v. Albright is inconsistent and irreconcilable with the plain language and intent of the will.

LAMM, J.—This is a suit in ejectment, brought by certain grandchildren of Michael J. Gannon, deceased, to recover possession of certain lots in Zephyr Heights Addition to the town of Kirkwood, in St. Louis county, Missouri, fronting on Webster avenue, College avenue, Clay avenue and Idlewild place, and certain lots in Buena Vista Heights, fronting on Midway avenue — all said lots being part of the east half of the northwest quarter of section 12, township 44, range 5, and which said latter tract is the same land described in

the fourth clause of the will of Michael J. Gannon, Sr., presently to be considered.

The answer admitted possession, denied all other allegations in the petition and furthermore specifically pleaded in bar a title by adverse possession.

At the trial the court held the Statute of Limitations ran against one plaintiff, Fannie Zoehringer, and as to her interest (an undivided one-sixth) the judgment was for defendants. The facts upon which the judgment against Mrs. Zoehringer was based are unquestioned and that judgment remains unchallenged.

As to the remaining five-sixths interest in the land, the court felt itself in bonds, that is, constrained by the mandate of Division One sent down in Gannon et al. v. Pauk et al., 183 Mo. 265, and accordingly rendered judgment in favor of plaintiffs. From that judgment, defendants appeal.

Ouster is laid as of October 15, 1900. Michael J. Gannon, Sr., is the common source of title. He died in 1870, testate, a resident of Belleville, St. Clair county, Illinois, seized of a large estate in Illinois and Missouri and leaving a widow and numerous children. The will bears date December 23, 1869, and contains nine clauses — all of them complicated. The fourth and eighth clauses alone concern us, and read as follows:

"Fourth: I give, devise and bequeath unto my two sons, Michael J. Gannon, Jr., and Joseph E. Gannon, and unto their heirs and assigns forever, my farm, lying and being in the county of St. Louis and State of Missouri, which lies in the southern limits of Kirkwood, containing eighty acres, be the same more or less.

"It is my will that the same shall not be sold, at least not before the younger of the two, that is, Joseph E. Gannon, becomes of lawful age; and should either of them die without issue then the survivor, his heirs and assigns to take, own and have the part and portion

hereby bequeathed to the one so dying. And in the event both should die without leaving any issue, then it is my will that my surviving heirs (with the exception of my son John T. Gannon, who has had his share) shall have such property, like and like. . . .

"Eighth. It is my will that none of my real estate herein devised be sold until the youngest in each bequest and devise respectively becomes of lawful age, and that until such time or times my executrix in such capacity shall lease the same to the best advantage and collect the rents and income therefrom and out of the proceeds shall first pay all taxes and assessments lawfully made on said real estate; and, secondly, pay to those heirs which are of lawful age their share proportionately of the rent due them under this will on said real estate; thirdly, keep and maintain my minor heirs and children, clothe and feed them. And I enjoin upon her, my executrix, to see that my minor children receive a good English education."

One group of plaintiffs are the children of the devisee, Michael J. Gannon, Jr., mentioned in the aforesaid fourth clause. Another group of plaintiffs are the children of Joseph E. Gannon, mentioned in the same clause.

The case was tried on an agreed statement of facts, and thereby it stood admitted that, as between the parties, the defendant Pauk and those under whom he claimed had been in open, notorious, exclusive and adverse possession of the premises for a period of ten years continuously next before the filing of the suit. The further stipulation was entered into and produced at the trial, viz.: "It is agreed and stipulated that whatever title to property sued for was vested in Michael J. Gannon, Jr., and Joseph E. Gannon by virtue of the will of Michael J. Gannon, Sr., has been conveyed by *mesne* conveyances to the defendant Gustav Pauk. It is agreed that Michael J. Gannon, Jr., died

on or about the 15th day of May, 1887, leaving as his only children and heirs at law Fannie Gannon now intermarried with Gustavus Zoehringer." (Here follows the names and ages of the other children of Michael J. Gannon, Jr.) "It is further agreed that Joseph E. Gannon died on or about August 15, 1893; that he left as his only children and heirs at law, Eugenia Gannon, who has since intermarried with Gustavus Peterson, and who is now twenty-six years of age." (Here follows the names and ages of the other children of Joseph E. Gannon.) It was further agreed that plaintiffs were the only children of Michael J. Gannon, Jr., deceased, and Joseph E. Gannon, deceased, and that no children born to them had died leaving descendants, and that the plaintiff, the Mississippi Valley Trust Company, was curator of certain minor plaintiffs.

The will of Michael J. Gannon was produced in evidence by plaintiffs, defendants objecting to its introduction, on the theory that its fourth clause had been construed by this court in Banc (as presently to be seen) against plaintiffs' contention. The objection being overruled, defendants excepted. And in this connection it may as well be said that defendants do not now contend that the Statute of Limitations presents any valid defense against any child of the deceased devisees, named in the fourth clause (except Fannie Zoehringer), provided it is now held that plaintiffs' construction of that fourth clause is the right one.

A *resume* of the history of the case is as follows: Here before—the first time on the appeal of plaintiffs from a judgment in favor of defendants—the judgment was reversed and remanded to be retried according to the law as declared by Division One. [Gannon v. Pauk, 183 Mo. l. c. 281.] In that appeal the whole issue hinged on the construction of clause four of Michael J. Gannon's will. The construction given that clause

200 Sup.—6

by Division One is indicated by the last paragraph of the opinion, as follows:

"We hold that under the fourth clause of the will of Michael J. Gannon such an estate in the land in suit was devised to Michael J. Gannon, Jr., and Joseph E. Gannon as would under the common law and the statute *de donis* have been an estate tail to them and the heirs of their bodies, which by force of our statute, section 4592, became a life estate in the two sons, Michael J., Jr., and Joseph E., with the remainder in fee to their children, the plaintiffs in this case."

Said fourth clause of the Gannon will (as a main issue) was before this court for construction in another case, Gannon *et al.* v. Albright, 183 Mo. 238. That case was tried, *nisi,* before a different judge than presided in the Pauk case, who arrived at a different conclusion, and the case came here on defendant's appeal. The Albright case, assigned to Division Two, briefed, argued and submitted there, was finally transferred to Court in Banc. The conclusion reached in Banc is indicated by the last paragraph of the opinion (183 Mo. l. c. 264), as follows:

"To sum up, then, we hold that the will of Michael Gannon does not create an estate tail by express words; that there is no express limitation therein to 'the heirs of the body' or to the issue of the two sons, Michael and Joseph; that it does not create an estate tail by implication, because both by the language of the will and especially by the positive command of the statute of 1845" (R. S. 1899, sec. 4593) "the words 'die without issue' mean dying without issue living at the death of said Michael and Joseph, and therefore mean a definite failure of issue, and hence no fee tail can be implied from their use, and, finally, that by the said fourth clause of the will the said two sons took a fee simple subject to be defeated upon their dying without issue living at their death, and as both died leaving children, the plaintiffs herein, the contingency

upon which their fee simple was to be defeated never happened and never can happen, and their estate in fee became absolute, and their warranty deeds conveyed to defendants' grantors the fee simple title. A different conclusion was reached in the construction of this same clause in the will of Michael J. Gannon by Division One of this court in Edward Gannon *et al.* v. Gustave Pauk *et al.* at the October Term of this court (reported at page 265 of this volume), but upon reconsideration of the said clause in this case by the Court in Banc, we are not satisfied with the opinion of Division One construing said clause, and must decline to accept it as the proper construction of this will, and the judgment of the circuit court must be and is reversed.''

Such was the end of Gannon v. Albright.

The opinion in the Pauk case was apparently handed down in Division One July 1, 1904; that in the Albright case was apparently handed down June 22, 1904 — so read the reported cases inadvertently. In the Pauk case the four judges of Division One agreed to a certain construction of clause four of the will. In the Albright case in Banc four judges of the seven agreed to a different, *i. e.,* a contrary, construction of clause four. It will thus be seen that on the face of the printed report it would look as if the opinion of Division One was handed down *after* the opinion of the Court in Banc, and, hence, as the divisional opinion concludes with the words ''all concur,'' it would seem on the face of things that a majority (*i. e., four*) of the judges comprising this court had repudiated the opinion in Banc.

Because of this apparent solecism, as well as because of certain contentions made on the present appeal, it is not amiss to state more fully the facts spread on our records, as follows: Gannon v. Pauk was argued and submitted in Division One January 6, 1904. On March 17, 1904, an opinion was handed down reversing and remanding the case, to which opinion all

the judges of Division One agreed. On March 25th a motion to transfer to Court in Banc was filed. On May 25th that motion was overruled. So that, it will be seen that in point of fact Gannon v. Pauk was disposed of *before* the opinion in Gannon v. Albright was handed down in Banc. When Gannon v. Albright was in Banc for consultation, one of the judges of Division One reconsidered his divisional view, and that reconsideration was evidenced by his agreeing to the Banc opinion. Therefore, when some days later, according to the printed volume, the divisional opinion was handed down in which "all concur," the "all concur" must be held to hark back to the time when the opinion was actually handed down in Division, to-wit, March 17, 1904. So much to clear away obscurities and set the record right.

Instructions were offered and given on both sides. Defendants tendered instructions construing clause four of the will in accordance with its interpretation by this court in Banc in the Albright case. These were refused and defendants excepted.

On this record the issues presented here are neatly formulated by defendants' attorneys, thus:

"The question presented for determination is, what estate did the two sons of the testator have in this land, under the clause of the will just quoted" (the fourth clause)?

"Plaintiffs stand upon the proposition that an estate tail at common law was created by this paragraph of the will, which, under the statutes of this State, was cut down to a life estate in Michael J. Gannon and Joseph E. Gannon, with remainder in fee to their children; that Michael J. and Joseph E. could convey nothing but their life estate by their deed, and that plaintiffs, their children, take, as purchasers, under the will.

"The defendants, upon the other hand, maintain that the will conferred the title in fee to said land upon Michael J. Gannon, Jr., and Joseph E. Gannon, and

that the subsequent limitations and conditions are void, or, at least, that it vested in them a fee determinable as to each upon his dying without issue living at his death, and as both died leaving surviving children, the contingency upon which the fee was to be determined never occurred.''

But we think there is another question here, viz: Conceding, *arguendo,* that his sons took a life estate, did Michael Gannon, Sr., donate to said sons power to dispose of the fee?

The statutory rule for construing wills is as follows (R. S. 1899, sec. 4650): ''All courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters before them.''

The foregoing statutory rule is but a legislative declaration of a rule of construction long recognized by this court and believed to be universally applied. In Grace v. Perry, 197 Mo. l. c. 559, the doctrine of that rule is thus formulated by Brace, C. J.:

''The controlling rule in construing wills in this State, to which all technical rules of construction must give way, is to give effect to the true intent and meaning of the testator as the same may be gathered from the whole instrument, if not violative of some established rule of law; and in arriving at that intention the relation of the testator to the beneficiaries named in the will and the circumstances surrounding him at the time of its execution are to be taken into consideration, and the will read as near as may be from his standpoint, giving effect, if possible, to every clause and portion of it, and to this end, if need be, words may be supplied and omitted, and sentences transposed. [R. S. 1899, sec. 4650; Brooks v. Brooks, 187 Mo. 476; Dozier v. Dozier, 183 Mo. 137; Meiners v. Meiners, 179 Mo. 614; Simmons v. Cabanne, 177 Mo. 336; Underwood

v. Cave, 176 Mo. 1; Cross v. Hoch, 149 Mo. 325, and cases therein cited.]''

Guiding our feet by the light hung out in said cardinal rule of construction, the touchstone we must seek and apply is the true intent of Michael J. Gannon. That intent may be got at in various ways. One persuasive way would be to put our feet in his shoes and look at the situation through his eyes. However, in the case at bar, his shoes and eyes are not here, that is, we have not before us a situation and environment developed by oral testimony in true perspective and with proper life and color, as they must have been known to testator. We know nothing, for instance, of the testamentary disposition of Michael J. Gannon toward any of his devisees except as gleaned from the cold reading of his will. The ages of his children are not set forth, except that some of them evidently were minors. Their business capacity, their needs, his plans for them, their deserts, the state of his fatherly feelings towards them, respectively, and his whole family environment, are wanting. The will, therefore, cannot be construed in the light of such environment, but must only be construed by attending to the terms of the formal writing itself.

Attending thereto, the matter may be judicially looked at from several standpoints; and the first allowable standpoint may be: Did testator intend that power of alienating the fee in the land should be donated to Michael J. Gannon, Jr., and Joseph E. Gannon? If such power of alienation be donated by the will, either expressly or by inevitable implication, then this case must be determined in favor of defendants; because it is submitted to us on the theory that the two devisees named transferred the real estate by conveyances in proper form and that the same has been conveyed by *mesne* conveyances to defendant Pauk.

There is a "windy," that is, a cold side of the law,

now as formerly (Twelfth Night, Act III, Sc. 4), and the law turns a cold face (a windy side) to perpetuities and the tying up of landed properties by entailment. [R. S. 1899, secs. 4592, 4593, 4645, 4646.] By the same token, the law looks graciously upon the power of alienation; so that, a power of full alienation of the fee in the first taker under a will, even if he take and hold as life tenant only, when fully executed, cuts off a limitation over to a remainderman or executory devisee.

Thus, in the Grace case, *supra,* the will there under construction reads as follows: "All the residue of my estate, personal and mixed, I give and devise equally to my children, James S. Dougherty and Augusta Lucy Dougherty, during their natural lives, respectively, with remainder to their heirs or his or her heirs of their body, but with full power and authority to each of my said children after their majority to dispose of the absolute estate in fee simple title, and on the death of either the survivor to inherit. But, should both my children die without issue of their body, then and in that event my grandnephew, Charles F. Loker, shall inherit all my property."

It will be seen that the devise to James S. and Augusta Lucy Dougherty was that of a life estate with a limitation over. It will be seen that the power of alienating the fee was given to them when they reached their majority; and we held in that case that the power of alienating the fee should not perish by construction, and that when executed, as it was, it carried the fee and cut off the remainder. That holding was sustained by a wealth of cited cases—among others, Russell v. Eubanks, 84 Mo. 82; Harbison v. James, 90 Mo. 411; Lewis v. Pitman, 101 Mo. 281; Greffet v. Willman, 114 Mo. 106; Evans v. Folks, 135 Mo. 397; Underwood v. Cave, 176 Mo. 1; St. Louis L. & B. Ass'n v. Fueller, 182 Mo. 93.

So that, if it be conceded, as argued by plaintiffs,

that the clear intention of testator was that his sons took a life estate, yet if it be further determined that the proper construction of his will was that they had, to such life estate, the added power of disposing of the fee, then, in that event, the plaintiffs have no standing here.

In looking at the will from this point of view it will not do to assume that a power of alienating the fee is implied by the first paragraph of clause four of the will by the mere use of words assumed to grant a fee simple title to Joseph E. and Michael J. Gannon, Jr. Such assumption would be to beg the question, to proceed in a circle; for plaintiffs contend that the first paragraph of that clause of the will must be read and interpreted with the last paragraph, and, so read, the devise is cut down to a life estate; while defendants contend that a fee simple estate was devised by the first paragraph and that such estate cannot be cut down by the use of ambiguous words following, of inferential intent. But we have nothing to do with these refined contentions at this time. Our purpose for the present is to see if there can be gleaned from the will a clear purpose in testator's mind to donate a power of alienation to his two sons. Keeping this end steadily in view for the nonce, what does the will say about the power of alienation?

The first place that power is referred to is in the use of the word "assigns" in the first paragraph of clause four. The devise is of "my farm" to "my two sons . . . and unto their . . . assigns forever." Assigns means "those to whom property shall have been transferred." [Black's Law Dict., Tit. "Assigns."] If we give effect as near as may be to every word of this will, we must assign some office to "assigns." Between man and man the only office that can be assigned to that word is that testator contemplated that the devised land might be transferred to another, and testa-

tor granted his acquiescence in, and perpetual benediction upon, that transfer—giving assurances of title *"forever."* The language used bears the further construction that not only did the testator contemplate the land might be sold, but he contemplated it might be sold by his said two sons; and this is implied by the phrase, "their . . . assigns forever."

The next place the power of alienation is referred to in this will is in the second paragraph of the same clause. It seems that at least one of his said two sons was a minor. The language used might well import both were minors. The ages of plaintiffs (their children) agreed on below, would indicate that neither devisee was married at the date of the will. Be that as it may, the opening part of the second paragraph of clause four carries the meaning that testator was conscious of the presence in his mind of a formed testamentary intention to give his sons the power of selling the farm, and was conscious of the fact that he had so written it down in the first paragraph. But it occurred to him that *use* of the power of alienation ought to be postponed for a season, and so he wrote down as follows: "It is my will that the same" (that is, not a life estate, or a term, but the land itself, the very thing he had devised) "shall not be sold, at least not before the younger of the two, that is, Joseph E. Gannon, becomes of lawful age." That is, that the elder could not sell until the younger attained his majority.

It will be observed that the language of the will under exposition is not directly and point-blank that the land may be sold when the youngest son becomes of age. The language is that it shall not be sold until then. Attending, now, to the pole star of construction, to-wit, the intent of the testator, the inquiry is, what did testator mean by that language? This clause of the will, in a plain everyday sense, is the solemn talk of a father to his sons, a talk having death in his mind's

eye—and should be so treated. Doubtless, many a time and oft this father had told these sons they could not do a certain thing until a given time; and in every such instance, doubtless, the sons construed the prohibition, and rightly, too, to mean that when the appointed time came around they were given power to act. Such is by no means a strained construction; for, if A gives his son, B, a horse, for example, and tells B as a condition that he shall not sell the horse until he, the son, becomes of age, does not that mean between man and man that B may sell when he does become of age? We think so, and we think the law puts that construction upon it. Thus, if John Doe pleads that Richard Doe did not have power of alienation until he became of age, that pleading is construed to mean that said Doe had such power of alienation when he became of age; and this is so under the familiar doctrine of a negative pregnant—that is, a negative implying (or pregnant with) an affirmative.

Furthermore, testator was not yet done with the power of alienation. It was a subject that seemed to be uppermost in, and weigh heavily upon, his mind. Accordingly, he says in the eighth clause of his will: "It is my will that none of my real estate herein devised be sold until the youngest in each bequest and devise respectively becomes of lawful age, and that until such time or times my executrix, in such capacity, shall lease the same to the best advantage," etc., etc.

Here, then, the power of selling the devised farm is recurred to three distinct times, and apparently testator was conscious he had granted it, because he proceeds at once to hedge it about by limitations. To my mind this iteration and reiteration indicate no infirmity of purpose, but, to the contrary, indicate anxiety and caution, and go deeper than that and certify that testator intended to grant the power of alienation, knew he had granted the power and had followed the

donation of power by doing the best he could to protect the donees, his young sons, from an immature and premature use of that power.

In giving effect to the intent of testator, how can this power of alienation be read out of his will without mutilating the will itself?

It is suggested that the power of alienation exists, but, in this instance, means that the devisees named may transfer their life estate only. The trouble with this suggestion is that testator, himself, says not one word about a life estate. A life estate in plaintiffs' ancestors, if one was devised to them, is the creature of judicial interpretation—the child of judicial procreation, a product of the subtleties and refinements of the law of tenures, and the strict application of highly technical principles of construction—of all which, so far as the record shows, testator was in profound and (maybe) blissful ignorance. If we go to his own words, for a key to his intendments, we find he says in the fourth clause of his will that he devises "my farm." Not only so, but he devises it to "my two sons . . . and unto their . . . . assigns forever." In the second paragraph of the same clause he says, "the *same* shall not be sold . . . . before the younger of the two . . . . becomes of lawful age." And in the eighth clause he says, "that none of my real estate herein devised be sold until," etc. In each and every instance the reference is to the "farm," to the "same," to the "real estate," and no word is used to indicate that testator had in mind anything less than the fee itself.

But, conceding for the purposes of the argument, that by implication and necessary inference, looking at the will from its four corners, the sons take a life estate only, yet, as we have seen, the power of alienating the fee may be granted to a life tenant and thus cut off the remainderman; and, in my opinion, the will of Michael J. Gannon (without any judicial Caesarian

operation) may and must be delivered of a full, plain donation of a power to the two sons to alienate the fee.

It follows that the power having been executed, plaintiffs, who took as remaindermen, if at all, are not entitled to recover. [Grace v. Perry, *supra*, and cases cited.]

II. But if it be conceded that the conclusion reached in paragraph one of this opinion is too narrow, in that in getting at the intent of the testator we have singled out and laid too great a stress upon the power of alienation and have reached the conclusion that power to alienate the fee existed by not bearing constantly in mind other provisions of the will, still, we think, under other principles of construction, plaintiffs are not entitled to recover the land conveyed away by their ancestors. And this is so, because:

By section 4592, Revised Statutes 1899, it is provided as follows: "In cases where, by the common law or statute of England, any person might become seized in fee-tail of any lands, by virtue of any devise, gift, grant or other conveyance, or by any other means whatever, such person, instead of being seized thereof in fee-tail, shall be deemed and adjudged to be, and shall become seized thereof for his natural life only, and the remainder shall pass in fee simple absolute to the person to whom the estate-tail would, on the death of the first grantee, devisee or donee in tail, first pass according to the course of the common law, by virtue of such devise, gift, grant or conveyance."

Section 4593 reads as follows: "Where a remainder in lands or tenements, goods or chattels, shall be limited, by deed or otherwise, to take effect on the death of any person without heirs, or heirs of his body, or without issue, or on failure of issue, the words 'heirs' or 'issue' shall be construed to mean heirs or issue living at the death of the person named as ancestor."

Section 4594 reads as follows: "Where a remain-

der shall be limited to the heirs, or heirs of the body, of a person to whom a life estate in the same premises shall be given, the persons who, on the termination of the life estate, shall be the heir or heirs of the body of such tenant for life shall be entitled to take as purchasers in fee simple, by virtue of the remainder so limited in them.''

The foregoing sections appear in chapter 62, treating of uses and trusts. In the chapter on wills, certain cognate sections appear, thus:

Section 4645, which provides that, ''If any person, by last will, devise any real estate to any person, for the term of such person's life, and, after his or her death, to his or her children or heirs or right heirs in fee, such devise shall vest an estate for life only in such devisee, and remainder in fee simple in such children.''

And section 4646, which provides that, ''In all devises of lands or other estate in this State, in which the words 'heirs and assigns,' or 'heirs and assigns forever,' are omitted, and no expressions are contained in such will whereby it shall appear that such devise was intended to convey an estate for life only, and no further devise be made of the devised premises, to take effect after the death of the devisee to whom the same shall be given, it shall be understood to be the intention of the testator thereby to devise an absolute estate in the same, and shall convey an estate in fee simple to the devisee, for all such devised premises.''

The case on this appeal proceeds substantially on the theory on both sides that section 4592, under the Statute of Uses, and section 4645, under the Statute of Wills, do not apply in the sense that the will by *express* words creates a fee tail estate. The fee tail estate relied upon by plaintiffs is created, they argue, by necessary implication under the other provisions cited, *supra,* and from the proper construction of all the words

used in the fourth clause of the will.

Now, in creating a fee tail estate by implication and inference it would seem the implication should be a necessary implication, free from uncertainty, and the inference should be an inexorable one. And this is so for two reasons, viz:

In the first place, the first paragraph of the fourth clause of the will, standing on its own feet, alone, is a clear devise of a fee simple estate in the land to plaintiffs' ancestors; and it is settled law that if a fee simple estate be devised in the first instance, it cannot be cut down to a less estate by the use of ambiguous words, inferential in their intent, following. [Yocum v. Siler, 160 Mo. l. c. 289, et seq., and cases cited.] In the second place, since an estate in fee tail when brought into existence by a will or deed is instantly struck down by the law and another substituted for it (Farrar v. Christy's Admrs., 24 Mo. l. c. 468-9), it would seem that courts should proceed with great caution and hesitancy in creating a fee tail estate by implication, and would not do so at all, unless coerced thereto by unambiguous words creating a necessary inference to that effect; for why create a fee tail estate (unless by necessary implication) only to have it destroyed by statute? Why is that begun for, which so soon is done for? To be over astute and over eager to create such an estate by implication only to strike it down and substitute another would be to imitate the doubtful wisdom of those droll physicians who are said, by legend, to throw their patients into a certain form of falling sickness in order to effectuate a cure of the improvised malady.

Assuming that a fee tail estate can only be created either by express words (absent here) or by unambiguous words certain to a necessary intent, where there has been a clear devise of a fee simple estate in the first instance, the question is, was a fee tail estate created by Michael J. Gannon's will by implication?

That question has been fully discussed on both sides by veteran counsel in briefs most admirable in matter and style, showing keen research and ripe learning in the law of tenures. The same question was under exposition in this court in Gannon v. Albright, *supra*, in Banc, and in the case at bar in Division One. In the pronouncements of this court delivered in those cases, the statutes we have cited were analyzed, construed and applied; the language of the fourth clause of the will was subject to a close gloss; and the mere divergence of opinion between the court in Banc and Division One does not call for a full reconsideration of the contentions deemed vital, then and now. To the contrary, it would seem that nothing new could be said on either side; and, considering the matter and sustained argumentation of those two opinions, it would be unpardonable vanity in the writer to undertake to carry coal to Newcastle, to assume he could add anything by way of light or learning; for my learned brothers have gone to the root of the thing and have levied tribute freely on the Year Books in a patient exploration of the ultimate and ancient sources of the common law. If the writer had such vanity, to give rein to it would be but to breed obscurity in the law in an idle effort to overload the case with riches of citation and exposition, to create darkness through ''excess of light'' maybe. Let it suffice to say that whatever disposition or ability in research the writer possesses has been diligently used to get at the justice and the law of the case. And since the opinions in Gannon v. Albright and in Gannon v. Pauk, heretofore spread on our printed record, will have to be read with this opinion, it will be sufficient to say that the conclusion I have come to is that there was no estate tail created by necessary implication, that there was a fee simple estate devised by clause four of the will to the ancestors of plaintiffs, and that there was a contin-

gency upon the happening of which that fee simple estate might be defeated, to-wit, the contingency of those ancestors dying without leaving children; but that contingency can never happen—it is dead and out of the case, because children were born to both, and both died leaving children.    This view was the construction placed upon that clause of the will by this court in Banc in Gannon v. Albright, and, it seems to me, rightly so.

Gannon v. Albright was controlled by Yocum v. Siler, 160 Mo. 281.    The will construed in the Yocum case has been before the Federal Circuit Court.    [Yocum v. Parker, 130 Fed. 722.]    The same will was again before the Circuit Court of Appeals, of the Eighth Circuit, in Yocum v. Parker, 134 Fed. 205, in 1904.    In both these cases the conclusion was the same as that of this court in Yocum v. Siler, 160 Mo. *supra*. It is true these Federal opinions might have proceeded on the theory the Federal courts would defer to the State courts somewhat in the construction of their own statutes.    But in this instance that rule was not invoked.    PHILIPS, J., on the circuit, and HOOK, J., in the Circuit Court of Appeals, speaking also for Sanborn and Thayer, circuit judges, construed the Yocum will and our statutes, *supra,* on general principles of law and reached the conclusion hereinbefore stated.    The doctrine of the Yocum case has become a rule of property and should be adhered to; and that conclusion necessitates the reversal of this case.

The learned circuit judge did right in following the mandate of Division One.    It was for this court to correct its own ambiguities, do away with its confusion of tongues, and speak with one voice, and that an authoritative one.

The judgment is, therefore, reversed and the cause remanded with directions to the circuit court to enter judgment for the defendants.

*Burgess* and *Fox, JJ.,* concur; *Gantt, J.,* concurs.

State ex rel. v. Wilder.

in second paragraph and expresses no opinion on the first; *Brace, C. J.,* and *Valliant, J.,* dissent; *Graves, J.,* not having been on the bench when the case was submitted, takes no part.