## Case No. 3,353.

CRANE v. COWELL et ux. et al.

[2 Curt. 178.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1854.

### CONSTRUCTION OF WILL.

A devise, "if any of my grandchildren should die, leaving no surviving issue, then I give and devise all the estate, both real and personal, herein given to such grandchild, unto the survivor or survivors of such as shall die as aforesaid, and to their heirs and assigns for ever."—*Held,* 1.

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

That the words "herein given" referred to the entire will, and not merely to the particular clause in which those words occurred. 2. That they provided for the contingency of the death of a grandchild without issue, after the decease of the testatrix, and cut down the fee-simple absolute, previously devised, to a fee-simple conditional, or to an estate tail; but to which of these, it was not necessary to decide.

This was a suit in equity [by John Crane against Benjamin Cowell and wife and others], in which the construction of the will of Waite Smith came in question. The will was as follows:

### Waite Smith's Will.

"In the name of God, Amen, I, Waite Smith of Providence, widow, although now being in firm health and possessing a sound mind and deposing memory, yet recollecting human mortality, and feeling the importance of that awful truth, 'It is appointed unto all people once to die,' do make, ordain, and establish this my last will and testament, in manner and form following, that is to say, recommending my soul through the merits of our Redeemer to the Great Father of spirits, and my body in decent Christian burial to repose in the bosom of the earth from whence it originated.

"I give and devise, in the first place, to my beloved daughter Martha, wife of Jeremiah Brown Howell, Esq., the use and occupation of all the real estate of which, at the time of my death, I may be seized and possessed, for and during the term of her natural life, to her sole, separate, and individual and particular use, and to the use of no other person whatsoever, hereby authorizing her the said Martha to take, receive, and appropriate, all and singular, the rents and profits thereof for and during all the time aforesaid. And it is further the intent and meaning of this devise, that she, my said daughter, shall have full power and authority to lease any part of the lands aforesaid, for the purpose of building thereon, for and during such term as is usual and customary in such leases in said town of Providence, and by covenant to bind the devisees of said lands to the performance of said lease or leases. so that the rents received thereon be made payable to her, my said daughter, and to her sole use as aforesaid, for and during her life as aforesaid, and to said devisees at the determination thereof. And further, the intent and meaning hereof is, that if her comfortable, decent, and respectable support and maintenance shall render it needful, she, my said daughter, shall, in such case, have full power and authority to sell and convey so much of the estate aforesaid, as will fully answer these purposes, and the avails of such sales to receive and appropriate to her sole use as aforesaid. And all the devises aforesaid, are to her, the said Martha, without impeachment or waste.

"Secondly. I give and devise unto my grandson John Brown Howell, the lot where- on the house of Eveleth & Harding now stands, being fifty foot on the front thereof, and holding the same width one hundred and fifty foot back towards Benefit street, to him, his heirs, and assigns for ever.

"Thirdly. I give and devise unto my grandson Charles Field Howell, the house wherein I now live, and the lot on which it stands, which lot extends south to the last-described lot and a line running from the north-east corner thereof to Benefit street, in the same direction that the north line of said lot runs, to him, his heirs, and assigns for ever. I also give and bequeathe unto my sa'd grandson Charles, on account of his name, a silver tankard and six table-spoons marked C. F.

"Fourthly. I give and devise unto my granddaughter Wait Field Howell, a lot of land whereon I propose to build a house if I should live, measuring as far east and west as I own north and south, to her, her heirs, and assigns for ever. I also give and bequeathe unto my said granddaughter, on account of her name, one silver teapot, one large family Bible, and my best bed and the furniture thereof with white diaper curtains. being the suit I brought from Smithfield, marked No. 3, together with the square mahogany bedstead which I purchased of the said Jeremiah Brown Howell.

"Fifthly. I bequeathe unto my granddaughter, Martha Brown Howell, a silver teapot.

"Sixthly. I give and bequeathe unto my granddaughter Elizabeth Brown Howell, one pair of silver pint cans.

"Seventhly. I give and bequeathe all the residue of my personal estate, in equal shares, unto all my granddaughters.

"Eighthly. I give and devise all the remainder of my real estate unto all my grandchildren, in equal shares, and to their heirs and assigns for ever. And it is hereby provided. and my will is that if any of my grandchildren should die, leaving no surviving issue, then I give and devise all the estate, both real and personal herein given, to such grandchild, unto the survivor or survivors of such as shall die as aforesaid, and to their heirs and assigns for ever. Provided that none of my grandsons shall, in any event, have any of my personal estate, other than the specific legacies herein bequeathed unto them so long as any of my granddaughters, or any of their issue, be living. It is also further provided, and my will is. that if all my grandchildren should die leaving no surviving issue, then I give and devise all my estate unto two of the daughters of my uncle Thomas Field, namely, Mary and Sally, and unto two of my said uncle's granddaughters, namely, Mary and Elizabeth Thornton, and to their heirs and assigns for ever.

"My will further is, that my executor hereinafter named fulfil my indenture to James Pink, my indentured mulatto servant, and that they provide for him a flock bed, under straw bed, bolster, and pillows, bedstead,

cord, two pairs of sheets, pillows, and bolster cases, one pair of blankets, and one yarn coverlid, and set off to him a small piece of land most convenient for my devisors, and large enough for a small house and garden, for his own use but not to sell, so that he may have the use and improvement thereof during his natural life, provided he lives in some respectable family after my decease, and faithfully fulfils his indenture to them as he was bound to do to me.

"Lastly. I appoint Isaac Brown and my said daughter executors of this my last will and testament, and I hereby order and direct them to pay all my just debts and funeral charges, and for the purpose of enabling them to do the same, I give them the following power and authority, that is to say, to sell at auction, or at a private sale, my lot of land in the neck adjoining the highway on three sides of it, containing about twenty acres, one other lot of land purchased by me of my son-in-law the said Jeremiah Brown Howell, being the land which descended to him from his mother, also a wood lot situated in Gloucester, containing about one hundred acres, which was my mother's, together with three lots lying east of the Benevolent Congregational meeting-house, purchased by me of that society, and also a thatch bed situated in said Providence, and now improved by me, and having sold said lands, to convey the same by deeds duly executed for that purpose, and provided the moneys arising from the sales aforesaid should not be sufficient to pay the debts and expenses aforesaid, together with the expenses of settling my estate, and completely executing this my last will and testament, then, and in that case, I hereby authorize and empower my said executors to make sale in manner as aforesaid, of so much of my other real estate as may be sufficient to make up that deficiency. And my will is that all deeds of conveyance of the lands aforesaid, sold in manner aforesaid, for said purposes, signed, sealed, and delivered and acknowledged by said executors, shall and may vest in the purchaser a good title thereunto. And I hereby revoke all former wills, and declare this to be my last will and testament.

"In testimony whereof I have hereunto set my hand and seal this fifth day of February, A. D. 1808."

Mr. Jenckes, for complainant.
Mr. Ames and Mr. Bradley, contra.

CURTIS, Circuit Justice. The land in question was specifically devised in the third clause of the will; and the first question is, whether the provisions of the eighth clause, which follow the devise therein made to the grandchildren, are applicable to the land devised to Charles F. Howell by the third clause. We are of opinion that those provisions of the eighth clause are applicable to all the lands devised to each of the two grandchildren, specifically, as well as to the "remainder of my real estate," devised in the eighth clause. The subject-matter in the contemplation of the testatrix, is described to be "all the estate, both real and personal, herein given," &c. The inquiry is, what was meant by the words "herein given." Do they refer solely to what is given by the eighth clause, or to what is given to any grandchild by the will? It is obvious, the former interpretation is not the true one; because the testatrix is dealing with personal as well as real estate, and the eighth clause devises real estate alone. She could not have intended to limit the effect of that provision to what passed under the eighth clause, for she expressly extends it to personalty which did not so pass. Moreover, the proviso which follows, and which only qualifies the effect of the preceding sentence, excepts from its operation specific legacies, made by other parts of the will; which there would have been no occasion to do, if the only property intended to be affected was devised by the eighth clause.

The next question is, whether the third clause, taken in connection with these provisions contained in the eighth clause, gave to Charles F. Howell an absolute estate in fee-simple. That such an estate is given to him by the third clause is clear. What is the effect of the subsequent provisions? Do they cut down the estate in fee-simple absolute, to an estate tail, or to a conditional fee, with an executory devise over; or to state the question less abstractly, does this part of the will provide only for the death of one or more grandchildren without issue, in the lifetime of the testatrix, so that at her decease each grandchild then living took absolutely, or does it provide for the death of one or more grandchildren without issue after the testator's decease, so that upon the death of any one, and the failure of his or her issue either definitely or indefinitely, the property was to go over, by way of executory devise, or by way of remainder after an estate tail? The counsel for the complainant holds the first of these views, and has addressed to the court a learned and ingenious argument in support of it. But we are clearly of opinion that it cannot be maintained. Upon a subject which has been adjudicated on in so many cases, perhaps it would be too much to declare, that any conclusion can be arrived at without some difficulty, and in entire harmony with all the decisions. But a careful examination of them enables us to say, that those relied on to show that the testatrix was simply making provisions for the decease in her lifetime of some of the objects of her bounty, are distinguishable, satisfactorily, from this case. There are numerous cases in which words referring to the death of a legatee, and in that event giving the property over, have

been construed to mean, his death in the lifetime of the testator. A gift to A., and in case of his death to B., is held to confer on A. an absolute interest if he be living at the testator's death. The cases are collected by Mr. Jarman in the second volume of his Treatise on Wills (chapter 48). The courts have proceeded upon the somewhat refined, but perhaps not unsatisfactory reason, that the testator had some contingency in view, and as the event of A.'s death was inevitable, the only contingency which could be supposed to be contemplated was, whether he should die during some particular period of time; and to prevent lapsing, and in favor of vested, rather than contingent interests, they have considered the lifetime of the testator to be that period. But it is manifest, that the whole basis of this reasoning fails, if the will gives the property over, not simply if the legatee die, but if his death is connected with some collateral event, such as dying without issue, which is contingent. In such a case, there is no necessity to seek for a contingency, or for ingrafting on the language of the testator, a limitation of time, during which the event is to happen, to render it contingent. For the testator has himself in terms announced an event which may or may not happen after his decease, as the contingency upon which the property is to go over. And this class of cases may be found collected in 2 Jarm. Wills, c. 40. There is another class of cases in which gifts over have been made upon survivorship among tenants in common, or among a class of persons, in which it has been held that survivorship at the death of the testator was intended. These cases are also set down by Mr. Jarman (volume 2, p. 632 et seq.). But whatever rule may be considered to exist on this subject, it can have no application to a case where the limitation to survivors is to take effect upon a contingency subsequent to the death of the testator. A gift over to survivors, implies that the persons who are to take shall be alive when the gift over takes effect; and if it is to take effect after the death of the testator that they should be alive after his death, and at the time when the contingency shall happen.

Having thus adverted to the rules of construction, it now remains to look at this will, to see if it be within the scope and reason of either and which of those rules. The language is, "My will is, that if any of my grandchildren should die, leaving no surviving issue, then I give and devise all the estate, both real and personal, herein given to such grandchild, unto the survivor or survivors of such as shall die as aforesaid, and to their heirs and assigns for ever." Here the property is given over, not simply on the event of death, but of death leaving no surviving issue, which is a contingency sufficient to satisfy the apparent intent of the testator, to provide for an uncertain event, and rendering it unnecessary to import into the will,

a particular period of time, within which the death must happen, to be contingent. Though I do not intend to intimate any doubt of the soundness of the rule of construction, which introduces into a will such a limitation of time, in cases where it is necessary to make a contingency, I feel no disposition to do it when it is not absolutely necessary. Indeed, the hypothesis that a testator, in making a testamentary provision, to take effect only upon and after his decease, really intended to provide for events in his lifetime, is somewhat unnatural and improbable, and has been more than once admitted to be so. Lord Brougham, who reviews many of the cases in Home v. Pillans, 2 Mylne & K. 15, says, this construction has always been adopted with some reluctance, founded as it is upon a supposition, which if not violent, is somewhat strong; which has been called unnatural by one chancellor, and another, Lord Hardwicke, has traced the origin of the term "lapse," to the supposition that the possibility of the legatee dying in his lifetime, escaped the observation of the testator. Ulrich v. Litchfield, 2 Atk. 373. In this case, the basis of this rule of construction failing, and the words of the testatrix fairly importing a dying at any time without surviving issue, I do not feel at liberty to introduce into the will the words "in my lifetime," and thus make the testatrix mean what she certainly has not said, and what I cannot find cause to declare she must have meant. Considering, then, that the estate of each grandchild was to go over in the event of his or her dying without surviving issue at any time after the death of the testatrix, the clause as to survivorship is necessarily controlled thereby, and must be held to refer to those, who shall survive when the event happens, upon which they are to take. Moreover, if the case at bar came within the rules of construction contended for by the complainant, the question between a definite or indefinite failure of issue, which has so often arisen, and has given rise to such diversities of opinion, could in very many cases have been avoided by considering the death, and failure of issue, and survivorship, were all to be referred to the lifetime of the testator. Without undertaking a review of these cases, a few of them may be referred to, which are not distinguishable from the case at bar, so far as respects the application of the rules contended for by the complainant. Thus in Anderson v. Jackson, 16 Johns. 382, there was a devise to A. and B. in fee-simple, and if either of them should die without issue, his share was to go to the survivor, and it was held to be a conditional fee. The same will was twice before the supreme court of the United States (12 Wheat. [25 U. S.] 153, and 1 Pet. [26 U. S.] 570), and the same construction was affirmed. The construction of this will was thus repeatedly examined, with the aid of the most eminent counsel in the country, and I am not aware that it was

ever suggested, that the dying without issue, and the survivorship therein provided for, were events to occur before the decease of the testator. Parker v. Parker, 5 Metc. [Mass.] 134; Hawley v. Northampton, 8 Mass. 3; Morgan v. Morgan, 5 Day, 517; Den v. Schenck, 3 Halst. [8 N. J. Law] 29; and the English cases collected in Lewis, Perp. 311, —all go to prove that this will must be construed to create an estate tail or a conditional fee, and that the effect of the clause under consideration does not merely provide against a lapse.

The result at which the court has arrived is, that the absolute fee-simple estate given by the third clause of the will to Charles F. Howell, was cut down to a conditional fee, or to an estate tail, by the subsequent provision of the will. Which of these two estates he took, it may not be necessary to decide; and as it is a question of difficulty, and may affect the rights of parties not before the court, in the present stage of the cause, it will not be passed upon.