### MERIBAH M. LAWTON & others *vs.* ALBERT F. CHASE.

A witness unacquainted with the market value of a certain kind of logs is incompetent to testify how far felled timber has been affected in market value by sawing it into logs of that kind.

This court will not hold that a witness was improperly admitted to testify as an expert to the market value of a peculiar kind of logs at a certain place on evidence that his experience was acquired by dealing in such logs for several years at a place ten miles distant, and afterwards for several years at a place forty miles distant, and that he had no special knowledge otherwise.

Evidence of the price for which a lot of trees prostrated by a storm was sold by auction was excluded on the question of the market value of another lot of trees prostrated by the same storm on neighboring land. *Held*, that a bill of exceptions to its exclusion could not be sustained, which failed to show that the two lots were in similar condition.

TORT. Writ dated March 23, 1870. The declaration alleged that a tract of woodland in Rehoboth was possessed and occupied by Meribah Rounds as tenant thereof for life, with remainder to the plaintiffs; and that the defendant cut certain trees thereon and converted the timber to his use. The answer denied that the defendant felled any trees on the land; and alleged that certain trees thereon were prostrated by a storm, that on the petition of Mrs. Rounds trustees were appointed by the probate court to sell the wood on the tract and sold the same to the defendant, and that whatever the defendant did to the wood was done by

authority given to him by Mrs. Rounds, and by virtue of his purchase. Trial, and verdict for the defendant, in the superior court, before *Reed*, J., who allowed a bill of exceptions of which the following are the material parts :

" It appeared that nearly all the timber trees on the premises were prostrated in the gale of September 1869 ; that the defendant, by some arrangement with the life tenant, entered on the premises, trimmed out nearly all the pine timber trees thereon, severed a large number from the stump, and of the trees so severed cut up a portion into saw-mill logs, so called, a portion into logs of a shorter length, called box-board logs, and the balance into shingle stuff. The defendant commenced these operations in December 1869, and continued about two months. All the timber on the lot was sold by the trustees appointed as stated in the answer, on March 17, 1870, lying on the lot as it had been left by the defendant, and free from any incumbrance or claim for the cutting which had been done.

" The plaintiff introduced considerable evidence tending to show that the market value of the property in question was much more at the time the defendant entered upon the premises than was realized at the sale ; and contended that the aforesaid acts of the defendant, especially the trimming and severing of the trees, and the cutting of them up into box-board logs, had greatly diminished its fair market value ; and the defendant offered considerable evidence in contradiction.

" The defendant, after he began to cut, erected a mill for his own use near the premises, adapted to sawing box-board logs. Other than this, there was no mill that could be used for that purpose within fifteen miles ; but there was a saw-mill for other purposes near by. Box-board logs were not known there, nor was there any market for them, except that the defendant, about a month before the sale, purchased one or two other lots, and had sawed some box-board logs. The plaintiffs called several witnesses who had known the *locus* well for a long time, had cut and carted lumber, bought and sold it for a number of years, two of whom had also run saw-mills, and all of whom knew the market value of all forms of lumber, but none of them had any knowl-

edge of the market value of box-board logs. These witnesses were severally asked how much in their opinion the fair market value of the timber, at the time of the trustee sale, had been affected by the acts of the defendant above stated. To this evidence the defendant objected, and it was excluded.

" It appeared that the defendant had been engaged for many years in sawing box-board logs, and buying and selling them, in Freetown, about ten miles from the *locus*, and afterwards for several years in Dartmouth, about forty miles away; but it did not appear that he had any special knowledge of the market value of box-board logs in the vicinity of the premises, except as before stated. He was allowed, against the plaintiffs' objection, to give his opinion of the market value of box-board logs at that place.

" The trustees at the same time sold at auction another lot of timber, which had been prostrated by the same gale, lying on the opposite side of the highway, and in relative quantity, growth and size of the timber similar to the timber on the former lot, but the lot was of smaller dimensions. The timber on this lot had not been cut or meddled with by any one. The plaintiffs, having shown the relative size of the two lots, offered to show the price for which this last lot was sold, as evidence tending to show what would have been the market value of the timber in question if it had not been cut by the defendant. This evidence was rejected."

*H. J. Fuller*, for the plaintiffs.

*G. Marston*, (*C. W. Clifford* with him,) for the defendant.

MORTON, J. 1. The trees upon the plaintiffs' land having been prostrated by a gale, the defendant entered upon the premises, trimmed the trees, and cut some of them into short logs, called box-board logs. All the timber remained upon the land, and enured to the benefit of the owners of the land, free from any claim for the cutting which had been done by the defendant. It is impossible to ascertain the injury done to the plaintiffs by the acts of the defendant, except by comparing the value of the timber as it lay when prostrated, with its value after the defendant had trimmed and cut it into box-board logs. If the value of the box-board logs was greater than, or as great as, the value of the timber before the defendant interfered with it, the plaintiffs

sustained no injury. If it was less, the injury of the plaintiffs is measured by the difference between the two values. No witness therefore was competent to give an opinion upon the question of the effect of the acts of the defendant upon the value of the timber, unless he had knowledge both of the value of the timber before and of its value after it was cut into box-board logs. The witnesses offered by the plaintiffs had sufficient knowledge to render them competent to give an opinion as to the value of the timber before it was cut into logs; but they had no knowledge of the market value of box-board logs. As the answer to the question put to them involved a knowledge of the value of such logs, to make it competent, the question was rightly ruled out by the court.

2. The exception to the ruling of the court, permitting the defendant to testify to his opinion as to the value of box-board logs, cannot be maintained. He had been for many years engaged in sawing and buying and selling such logs, in neighboring towns, and had erected a mill for sawing them in the immediate vicinity of the premises. He is thus shown to possess unusual knowledge upon the subject as to which his opinion was asked. On the question of the sufficiency of the knowledge of the witness, much must be left to the discretion of the presiding judge; and if we can revise his ruling in this case, we are of opinion that it was correct. *Swan* v. *Middlesex*, 101 Mass. 173.

3. Upon the question of the value of the timber in controversy before it was cut by the defendant, the plaintiffs offered to show the price which another lot of timber, on a lot across the highway, and which had been prostrated by the same gale, brought at an auction sale. The admissibility of this testimony depended upon the question whether the two lots of timber were so far similar as to afford a comparison which would enable the jury to ascertain the value of the timber in question. This question must be passed upon by the presiding judge in the first instance; and the exercise of his discretion in rejecting or admitting the evidence will not be revised by this court, unless all the facts upon which his decision was founded are reported. *Presbrey* v. *Old Colony & Newport Railway Co.* 103 Mass. 1. *Shattuck* v. *Stone*-

*ham Branch Railroad Co.* 6 Allen, 115. This bill of exceptions does not show all the facts upon which the ruling excepted to was founded. It does not show that the two lots of timber were in similar condition. The effect of the gale upon the two lots may have been very dissimilar, and the condition of the timber may have been so far different that the value of one would afford no safe criterion of the value of the other. The bill of exceptions does not show that the decision of the judge upon this question was erroneous. *Standish* v. *Washburn*, 21 Pick. 237.

*Exceptions overruled.*