DANIEL F. HULL et al., Appellants, v. SMITH CAL·
VERT et al., Appellants.

In Banc, December 31, 1920.

1. **EXECUTORY DEVISE: Limited Upon Fee.** An executory devise can be limited upon a fee; and where a fee simple is devised to one, but is to determine upon some future event and the entire estate is thereupon to go to another, it is an executory devise.

2. ——: ——: **Power of Disposition.** Words in a will which, considered alone, would give a fee to the first taker and vest in him power of disposition, cannot be used to destroy a subsequent executory devise which plainly defeats such preceding fee upon the happening of a future event. Although the words in a devise to a named devisee are adequate, when considered alone and apart from their context, to vest in him an absolute power of disposition, they do not destroy a limitation over to other devisees in case of his death without children or other lawful issue. Hence, where the will gave to testator's wife certain lands "during her natural lifetime and at her death to go to my son," and his other lands to "my son, his heirs and assigns forever, and in case of the death of my son, previous to that of his mother, and him dying without issue, his mother shall hold all his part of the estate in the same manner and form as she holds her own, and at her death the entire estate to go to" testator's heirs, and the son died without lawful issue prior to the death of the mother, the apparent power of disposition invested in the son did not destroy the executory devise to testator's other heirs.

3. ——: ——: ——: **Added Power.** The power of disposition which precludes a limitation of a fee upon a fee is one conferred expressly, or by implication, by words other than those in the devise to the first taker sufficient, if standing alone, to devise a fee. It is an added or absolute power of disposition, added to the power implied in the previous words, and is absolute in con-

trast with the conditional power of disposition which the first taker gets in case an executory devise is limited upon a fee. The conditional power of alienation implied in the devise to the first taker does not avoid the limitation over; it can have that effect only when a power of disposition is expressly or by necessary implication added to such implied or conditional power.

4. ——: ——: ——: ——: **Heirs and Assigns.** The words "his heirs and assigns forever" suffixed to a devise to a son, followed by a limitation over to the testator's heirs in case of the son's death without lawful issue, do not enlarge or diminish the implied or conditional power of disposition, and do not defeat the executory devise; but are merely apt words to devise a fee, rendered unnecessary, but not changed in meaning, by the statutes. [Distinguishing Gannon v. Albright, 183 Mo. 238, and Gannon v. Pauk, 200 Mo. 75.]

5. ——: **Unambiguous Devise: Followed by Plain Executory Devise.** Where a certain devise is created by plain and unequivocal language in one clause of a will, it cannot be cut down by a subsequent clause unless the language used is as clear, plain and unequivocal as the language in the first clause; conversely, an estate first devised may be cut down by a subsequent clause as clear, plain and unequivocal as the language creating the first devise.

6. ——: **To Hull Heirs: Upon Son Dying Without Issue: Intervening Life Estate.** Samuel Hull, by will, devised to his wife, Mary, 170 acres "during her natural lifetime and at her death to my son, Oscar," and 290 acres "to my son Oscar, his heirs and assigns forever, and in case of the death of my son Oscar, previous to that of his mother and him dying without issue, his mother Mary shall hold all his part of the estate in the same manner and form as she holds her own, and at her death the entire estate shall go to the Hull heirs." Oscar died without issue prior to his mother. *Held,* first, that the fact that Oscar would have taken a remainder in the 170 acres devised for life to the mother did not render inoperative the subsequent limitation over by way of an executory devise to the "Hull heirs," nor did the intervention of the mother's life estate in the 290 acres, under the limitation providing therefor, prevent a limitation over to the "Hull heirs;" and, *second,* the "Hull heirs" did not mean Oscar's heirs, for, upon his death, his mother was his only heir, and the will expressly gives her a life estate and makes it plain that the limitation over is subject to her life estate, but they meant the testator's heirs or blood relatives, and the devise over to them is not ambiguous or uncertain.

7. ——: **Personalty: Entire Estate.** The will after giving a life estate to testator's wife and the remainder to his only son declared

Hull v. Calvert.

that if said son should die without lawful heirs "the entire estate," at his mother's death, should go to testator's heirs, and then named his wife executrix and declared that "said executrix is to hold all the personal property jointly for the use of herself and her son and to dispose of it as she may think best for the benefit of both, and when my said son becomes of age he shall receive one-half of all the personal property and money they have at that time belonging to the estate." The son died without lawful issue prior to his mother. *Held*, that the will deals with the personalty entirely separately from the realty, and the words "the entire estate" have reference to the realty only; and the executory devise to the testator's heirs did not include the one-half of the personal property which had been turned over to the son when he reached his majority, nor do testator's heirs have any interest in the personalty left by his wife upon her death.

8. ————: **Land Purchased by Devisee.** Where the will gave certain lands to testator's son and provided that, if he should die without lawful issue, his "entire estate" upon said son's death should go to testator's heirs, and by a separate provision gave one-half of his personalty to said son, to be delivered to him when he reached his majority, and that was done, and he thereafter bought other land not mentioned in the will, said land, upon his death without issue, did not go to testator's heirs, nor are they entitled to share therein, but it went to his surviving mother as his only heir.

Appeal from Clark Circuit Court.—*Hon. N. M. Pettingill,* Judge.

REVERSED AND REMANDED (*with directions*).

T. L. Montgomery for plaintiffs.

(1) The intent of the testator controls in the disposition of real and personal property under the law and a life estate may be created by implication even though a power of disposition may be given by the testator and the remainder (if such) will not be void. Walton v. Drumtra, 152 Mo. 489; Bean v. Kemmur, 86 Mo. 670; Burnett v. Burnett, 244 Mo. 491; Mumro v. Collins, 95 Mo. 41; Lewis v. Pitman, 101 Mo. 293; McMillan v. Farrow, 141 Mo. 62; Barmell v. Cole, 136 Mo. 213; Garland v. Smith, 164 Mo. 16; Buford v. Aldridge, 165 Mo. 425; Armor v. Frey, 226 Mo. 667; Romjue

v. Randolph, 166 Mo. App. 87. (2) The cases apparently relied upon by defendants in their printed argument filed in this cause have been distinguished, criticised and in some instances overruled, in more recent adjudications of this court. Gibson v. Gibson, 229 Mo. 490; Threlkeld v. Threlkeld, 238 Mo. 459; Dickerson v. Dickerson, 211 Mo. 483; Frieman v. Maxwell, 262 Mo. 23. (3) At the death of Oscar before his mother the entire estate, both real and personal, merged into one, an executory devise and vested in the Hull heirs, not the Calvert heirs.

*J. A. Whiteside* and *J. W. Powell* for defendant.

(1) The will of Samuel Hull gave to his son, Oscar G. Hull, the fee in the lands devised. Text writers and a long line of well-considered cases in the courts of this and other states affirm this contention. The doctrine that a remainder of any kind, under whatever name, whether it be called a remainder, an executory devise or some other name, cannot be engrafted on a fee is the well-established law of this State. Where the fee is once given, it cannot be, in any way, cut down or limited by subsequent vague and general expressions, or upon any conjecture or contingency. Sevier v. Woodson, 205 Mo. 214; Small v. Field, 102 Mo. 127; Reinders v. Koppelmann, 68 Mo. 400; Rubey v. Barnett, 12 Mo. 3; Norcum v. D'Oench, 17 Mo. 98; Green v. Sutton, 50 Mo. 186; Roth v. Rauschenbusch, 173 Mo. 594; Evans v. Folks, 135 Mo. 403; Henderson v. Calhoun, 183 S. W. 584; Page on Wills, secs. 667-668; Thompson on Wills, sec. 281, last part; Washburn, Real Property (2 Ed.), secs. 693-4; Underhill on Wills, secs. 358, 689; Schureler on Wills, sec. 478, last part; Gannon v. Albright, 183 Mo. 247; Gannon v. Pauk, 200 Mo. 79. (2) In the Hull will the granting clause to Oscar G. Hull is a distinct sentence. Is is in clear and concise language. There can be no doubt as to its meaning—"To him and his heirs and assigns forever." After thus devising the fee in

this strong and positive language, the testator, in a separate sentence, attempts to limit the fee in language so vague and uncertain, so ambiguous, as to leave us to guess what he intended. Whom did the testator mean to designate by "The Hull Heirs?" Did he mean the Oscar G. Hull heirs, or his own collateral heirs? This language is too vague, indefinite and uncertain to in any way limit or cut down the fee so plainly and unmistakably devised in the first sentence of the devise. Howard v. Howard, 184 S. W. 993; Small v. Field, 102 Mo. 127; Middleton v. Dudley, 183 S. W. 443; Sevier v. Woodson, 105 Mo. 202-214; Yocum v. Siler, 160 Mo. 287; Gannon v. Pauk, 200 Mo. 96. "The doctrine of the Yocum case has become a rule of property and should be adhered to." Cox v. Jones, 229 Mo. 63; Wells v. Fuchs, 226 Mo. 97; Sevier v. Woodson, 205 Mo. 202. (3) On the death of Samuel Hull his son, Oscar G. Hull, immediately became the absolute owner in fee simple of the land given him by the will, and the title having once vested in him the land belonged to him and his heirs and assigns forever. Henderson v. Calhoun, 183 S. W. 584; Small v. Field, 102 Mo. 104; Howard v. Howard, 184 S. W. 993; 40 Cyc. 1585. (4) Mary C. Hull and Oscar G. Hull held the personalty as tenants in common. Lemmons v. Reynolds, 170 Mo. 227; Rodney v. Landau, 104 Mo. 251. A limitation in an adjoining clause will not apply to personal property in another clause unless expressly stated, but the personalty will bo absolutely. 40 Cyc. 1612. A general absolute gift will not be cut down to the life estate by a limited separate gift in other property. Ibid, 1613. There is no limitation of the personal property under the terms of the will. The same was bequeathed to Mary C. Hull and Oscar G. Hull in equal parts without any limitation whatever. Settles v. Shafer, 229 Mo. 561.

BLAIR, J.—The disposition of this appeal depends upon the construction of the will of Samuel Hull, which reads thus:

"In the name of God, Amen. I, Samuel Hull, of Jefferson Township, Clark County, the State of Missouri, do therefore make, ordain, publish and declare this to be my last will and testament; that is to say:

"First, after all my lawful debts are paid and discharged, the residue of my estate, real and personal, I give, bequeath and dispose of as follows, to-wit:

"To my beloved wife, Mary C. Hull, the east half of the northwest quarter and sixty acres off of the west end of the north half of the southwest quarter and ten acres off of the north end of the east twenty of the north half of the southwest quarter, all being in Section Eleven, Township Sixty-six, Range Eight, west, in Clark County, Missouri, and the following, to-wit:

"The west half of the northwest fourth of the northeast quarter of Section Twenty-one, all in said township, county and State. The above said Mrs. Hull is to have and to hold all the above said lands during her natural lifetime and at her death go to my son Oscar G. Hull. All the remainder of my real estate for which I hold deeds, I give, will and bequeath to my son Ocsar G. Hull, him and his heirs and assigns forever. And in case of the death of my son Oscar G. Hull, previous to that of his mother, and him dying without issue, or leaving a child who is his lawful heir, his mother M. C. Hull shall hold all his part of the estate in the same manner and form as she holds her own, and at her death the entire estate to go to the Hull heirs. And I hereby appoint Mary C. Hull executrix of this, my last will and testament; and said executrix is to hold all the personal property jointly for the benefit of herself and her son Oscar G. Hull, and to dispose of it as she may think best for the benefit of both, and when Oscar G. Hull becomes of age he shall receive one-half of all the personal property and money they have at

that time belonging to the estate and all money due the said testator from any association to which he belongs shall be considered and held as personal property; and it is my last will and testament that my wife, Mrs. M. C. Hull, shall not be required to give bond as executrix of this estate."

It is stipulated: that Samuel Hull died March 11, 1878, seized of the land described in the will and personalty appraised at $1456.41; that on final settlement a balance of $1110.70 was due the estate; that Samuel's widow, Mary C., and one son, Oscar G., survived him and are the devisees named in the will; that Oscar G. was fourteen year of age at the time of his father's death; that he lived on the land with his mother until April 10, 1892, when he died, aged twenty-eight; that "he never married, nor had any child or children;" that after Oscar attained his majority, in 1882, Mary C. paid to him the proceeds of one-half of Samuel Hull's personalty, in the sum of $780.40, and took his receipt; that thereafter Oscar purchased a seven-eighths interest in sixty acres of land other than that described in Samuel's will; that Mary C. Hull married J. C. Wilson in 1891; that no children were born of this marriage; that Wilson died in 1914, and Mary C. died October 1, 1916; that Mary C. managed and used the real estate and personalty left by Samuel Hull, except the one-half paid over to Oscar in 1885, until her death, and took all the real and personal property of Oscar after his death; that plaintiffs and the minor defendants are the brother and the surviving decendants of other brothers and sisters of Samuel Hull and are his heirs, and that the other defendants are the devisees under the will of Mary C. Wilson, formerly Mary C. Hull, and claim the property in question as such; that the personal property in Mary C's. hands at her death amounted to many thousands of dollars.

The evidence shows that Samuel Hull died of consumption and that prior to Samuel's death Oscar, the son, while bright and dutiful, was not physically strong.

Oscar's death, in 1892, was due to the same disease which carried off his father.

The judgment gave plaintiffs the one hundred and seventy-acre tract and gave defendants all other property in suit. Both plaintiffs and defendants on the trial claimed all the property, real and personal, mentioned in the above statement. Both appealed from the judgment.

I. Plaintiffs take the position that they take the land, described in the will of Samuel Hull, by virtue of an executory devise limited upon the fee Oscar G. Hull would have taken had he not died without issue or child surviving him. Defendants are of a different opinion.

Executory Devise.

It is earnestly insisted by defendant's counsel that the limitation upon which plaintiffs rely is void by way of an executory devise because Oscar G. Hull, they contend, was vested with an absolute power of disposition, destructive of such a limitation. Their argument, as we understand it, runs thus: (1) that with respect to both tracts devised by Samuel Hull, the words of the will in the devises to Oscar, in the first instance, are adequate, when considered alone, to vest in him fee simple title; (2) that a power of alienation is one of the essential elements of such a title; that, (3), therefore, since Oscar was devised a fee simple in the first instance he took with it as its incident "an absolute power of disposition;" and that (4) such a power renders void a subsequent limitation over by way of executory devise; (5), in this case, rendered void the limitation under which plaintiffs claim.

Power of Disposition.

Is the power of alienation inherent in every fee such a "power of disposition" or alienation that it has the effect for which defendants contend? In view of their earnest presentation of the question and their reliance on certain decisions of this court, we shall give the question a more extended consideration than might seem necessary under other circumstances.

No one questions that an executory devise can be limited upon a fee. We do not understand defendants' counsel to contend directly to the contrary. In case "a fee simple is devised to one, but is to determine upon some future event, and the entire estate thereupon to go over to another," it is an executory devise. [2 Washburn on Real Property (6 Ed.), sec. 1739, p. 642; 4 Kent (14 Ed.), p. 269; Pells v. Brown, 2 Civ. Jac. 590; Greenawalt v. Greenawalt, 71 Pa. 1. c. 486, 487; Naylor v. Godman, 109 Mo. 1. c. 550; Yocum v. Siler, 160 Mo. 1. c. 296 et seq.; Gannon v. Albright, 183 Mo. 238, 264.] It is true, nevertheless, that if defendants' present insistence is sound, then the impossibility of the legal existence of a limitation over upon a fee, by way of executory devise, becomes at once apparent; for no fee can be limited upon a fee by way of executory devise unless in the devise to the first taker words are used which, considered alone, would give a fee to the first taker; but, if defendants are right, these words when so used necessarily give an "absolute power of disposition" which defeats the limitation over. If this be true in one case it must be true in all, and a fee could never be limited upon a fee by way of executory devise. This follows as a necessary conclusion from the position defendants take, but is a conclusion contrary to the settled law, as is shown by the authorities cited and multitudes of others. We think defendants are in error in assuming that the power of disposition incident to a fee, such as is given in a devise to a first taker in a will like that in this case, is an "absolute power of disposition" within the meaning of the rule invoked. The cases make this clear.

In Gannon v. Albright, 183 Mo. 1. c. 251 et seq., the rule upon which defendants rely is stated thus: "Where an estate is devised to one and his heirs and assigns forever *and there is added*" (italics ours) "either by express words or by implication an absolute power of alienation, the limitation over is void" because of its

inconsistency with the power to alienate. This statement of the rule appears at the close of that part of the opinion designed to show that the Gannon will contained the "added" power of disposition. The authorities there cited were neither cited to support, nor do they support, the view that the power of disposition incident to a fee devised in a will like the Gannon or Hull will is sufficient to render applicable the rule now invoked, whether or no the words "his heirs and assigns forever" appear in the devise to the first taker.

Mr. Redfield, 2 Wills, p. 296, sec. 278, illustrates the rule he states: "Thus a devise to the testator's son P. of certain real and personal estate, and to his heirs and assigns forever, *adding*, that if P. should die, and leave no lawful heirs, what estate *he should leave* to be equally divided between another son and a grandson of the testator, naming them, it was held the devise over was void, as being inconsistent with the absolute interest in the first devisee." In the case from which this illustration was taken (Ide v. Ide, 5 Mass. 500) it was held that the estate would have passed to the devisees over, by way of executory devise, except for the fact that the devise over was only of what estate Peleg Ide "should leave;" that these words necessarily implied a full power of disposition, repugnant to a devise over, and it was, therefore, void.

The case of Brightman v. Brightman is also cited in the note in 2 Redfield, as in 108 Mass. 238. It appears in 100 Mass. 238. In that case a devise to D and J "and to their heirs and assigns" was coupled with a condition for making payments to named persons, and the whole followed by a provision that "If the said Daniel or John shall decease leaving no issue of his body lawfully begotten, then what I have here *given and devised* to such one I here devise to the survivor and his heirs and assigns." It was held that the words in the first clause, taken by themselves, gave an estate in fee simple, but that the subsequent quoted clause "created an executory

devise limited upon that fee simple.'' In Jackson, ex dem. Brewster v. Bull, 10 Johns, 19, the devise was to M ''and his heirs and assigns forever.'' In a subsequent clause it was provided that in case M ''should die without lawful issue, the said property he *died possessed of,* I will to,'' etc. In an opinion participated in by Chancellor Kent, the court held that the words italicized implied a power of alienation by the devisee which imported absolute ownership repugnant to the limitation and destructive of it. The court cited the case of Ide v. Ide, supra, and pointed out that the limitation considered in that case would have been good except for the presence of the words ''what estate he shall leave.'' In Jones v. Bacon, 68 Me. l. c. 36, is quoted from Ramsdell v. Ramsdell, 21 Me. 288, the following: ''If estates be devised to a person with or without words of inheritance, *and* with an absolute right to sell and appropriate the proceeds at pleasure to his own use, it is not perceived how there can be a vested interest imparted to another in the same estate or property. Such full dominion in the devisee or legatee is inconsistent with and destructive of all other rights.'' In Kelly v. Meins, 135 Mass. 231, the devise was to B, ''to have and to hold the same to him . . . his heirs, executors, administrators and assigns, forever.'' A subsequent clause provided that if B died without living issue ''then *any portion* of my said estate and property *which may remain* shall be equally divided among,'' etc. The court made the decision on this point turn solely on the implication of a power of alienation from the words ''which may remain.'' A like course of argument is found in McKenzie's Appeal, 41 Conn. l. c. 608 et seq., and cases cited; Howard v. Carusi, 109 U. S. l. c. 730 et seq.; Wolfer v. Hemmer, 144 Ill. 554; Roberts v. Lewis, 153 U. S. 367; Cook v. Walker, 15 Ga. l. c. 462; Armstrong v. Kent, 21 N. J. L. l. c. 519 et seq.

Kent, vol. 4 (14 Ed.) pp. 270, 271, states the rule thus: ''If, therefore, there be an absolute power of

disposition given by the will to the first taker, as if an estate be devised to A in fee, and if he dies *possessed* of the property without lawful issue, the remainder over the property which he, dying without heirs, should *leave,* or without *selling* or *devising* the same, the remainder over is void as a remainder, because of the preceding fee; and it is void by way of executory devise because the limitation is inconsistent with the absolute estate, or power of disposition expressly given or necessarily implied by the will. A valid executory devise cannot subsist under an absolute power of disposition in the first taker." The cases cited in support of this are Ide v. Ide, supra; Jackson v. Bull, supra, and the like.

Chancellor Kent was not announcing a rule in conflict with that which permits a fee to be limited upon a fee by way of executory devise. [4 Kent (14 Ed.) p. 265, 269.] The power of disposition which precludes a limitation of a fee upon a fee is shown by the citations above to be one conferred expressly, or by implication, by words other than those in the devise to the first taker sufficient, if standing alone, to devise a fee. It is an "added" or "absolute" power of disposition to which the courts give this effect. It is added to the power implied in the previous words. It is *absolute* in contrast with the conditional power of disposition which the first taker gets in case an executory devise is limited upon a fee. When an executory devise is limited upon a fee the first taker takes a conditional fee and the condition affects as much his power to alien as does his power to hold. He can alien the estate, subject to the limitation over. He thus has, in every case of an executory devise a power to dispose of the property, subject to the condition, i. e. he has a *conditional* power of alienation. This conditional power to alien does not avoid the limitation over. It is the purpose and necessary effect of the devise and limitation to vest such a conditional power; but by "an absolute power" is meant one which enables the first taker to convey the whole estate, free from any

condition.  It is to distinguish it from the conditional power that the term absolute is used in characterizing it.

In McRee's Admrs. v. Means, 34 Ala. l. c. 368 et seq., the court met an argument like that we are considering and discussed the question at some length.  It concluded at page 369; "The proposition, therefore, that the power of disposition incident to every fee defeats an executory devise limited upon it, is not maintainable; and the principle that where there is an absolute power of disposition, the limitation over is repugnant and void, must not be understood to assert that proposition." In Booker v. Booker, 5 Hump. l. c. 511, GREEN, J., for the court, said: "But it is insisted that . . . the first taker had an unlimited power of disposition by the will, because the devise vests in its terms a fee simple estate in him; and having such an estate, he had a right to dispose of it.  No such consequence as is supposed results from the simple fact that the devisee took an estate in fee; for one of the peculiarities of an executory devise is, that a fee may be limited upon a fee, which in a contingent remainder cannot be done." In Brown v. Hunt, 12 Heisk. l. c. 409, this ruling was approved and followed. .

II.  It is urged that the words "his heirs and assigns forever" which appear in the devise to Oscar of the two hundred and ninety acre tract distinguish this devise from that of the one hundred and seventy acres and have in them something which aids defendants' argument in its application to that tract. The cases of Gannon v. Albright, supra, and Gannon v. Pauk, 200 Mo. 75, are cited in support of this view.  In the first case the words "heirs and assigns forever" were considered in connection with a question not the same as that now presented in this case.  That question was whether the first sentence of the fourth paragraph of the will, considered alone, gave an estate in fee simple.  When it came to the question presented here, Judge GANTT said: "We understand it is settled law that where an estate is de-

*Heirs and Assigns.*

vised to one and his heirs and assigns forever *and there is added* either by express words or by implication an absolute power of alienation, the limitation over is void. In our opinion the words of this restraining clause" (theretofore discussed) "give an express power to sell, but if not there is clearly given such power by implication." Nevertheless, the court seems to have held that the will limited upon the fee given the sons a condition which might defeat it, but that the condition failed. This case does not support defendants position.

In Gannon v. Pauk, supra, some emphasis is placed upon the words "his heirs and assigns forever" in connection with the question whether the subsequent language of the Gannon will cut down to a life estate, with power of disposition, the fee granted the first taker by the first sentence of the fourth clause. The court said in that case that the power to alien could not be implied from the language of the first sentence of the fourth clause (which included the words "heirs and assigns forever") from "the mere use of the words assumed to grant a fee simple" without begging the question. This is sound. This paragraph of the opinion did not, in other respects, secure the approval of a majority of the court. [200 Mo. l. c. 96, 97.] In the second paragraph, in which four judges concurred, the same conclusion was reached as in Gannon v. Albright, supra. This case does not aid defendants, in our opinion. No case has been cited and we have found none which holds or intimates that the use of the words "his heirs and assigns forever" in a devise to a first taker "adds" or vests a power of disposition of a sort to defeat a limitation over by way of executory devise. The cases already cited are, in principle, to the contrary. The words are merely apt words to devise a fee, rendered unnecessary, but not changed in meaning, by our statute.

In Den v. Wertendyk, 7 N. J. L. l. c. 377, 378, the court in construing a will in which a devise was to the testator's children "and to each of their heirs and as-

signs forever," responded to an argument like that now being considered, as follows: "In the outset I will remark that little or no importance is to be attached to the use of the word assigns in this case, a circumstance upon which a considerable part of the argument was founded. I am not aware of a single case, wherein a certain interest having been given in a will, this word has been held to enlarge, or in any manner affect this interest. Every interest recognized by the law, unless under particular circumstances, is the object of an assignment. It belongs essentially to every species of interest or property. . . . The first section in Lyttleton shows that this word has no enlarging power in a conveyance; and Coke, in his commentary, fol. 9, b., shows that it is the same in case of a will. The argument, therefore, resting upon this basis, is entitled to no consideration."

In Theological Seminary v. Cole, 18 Barb, 360, 376 and 384, it was held that the use of the words "her heirs and assigns forever" in a devise to C did not imply such a power of disposition as would defeat an executory devise thereinafter limited. In Crane v. Cowell, 2 Curt. 178, a devise to C, "his heirs and assigns forever" was held to be cut down by a devise over, upon condition of C's death without surviving issue, to a conditional fee with an executory devise over or to an estate tail; which, the court found it unnecessary to decide. The following are also in point: Berg v. Anderson, 72 Pa. 87; DeWolf v. Middleton, 18 R. I. 810; O'Brien v. O'Leary, 64 N. H. 332; Christie v. Phyfe, 19 N. Y. 1. c. 356; Woodman v. Madijan, 58 N. H. 6; Den v. Taylor, 5 N. J. L. 413 et seq.; Daniel v. Thomson, 53 Ky. 662; Sale v. Crutchfield, 71 Ky. 636; Crozier v. Cundall, 99 Ky. 202; Ray v. Enslin, 2 Mass. 554; Whitcomb v. Taylor, 122 Mass. 243; Lippencott v. Warder, 14 Serg. & R. 115; Eby v. Eby, 5 Pa. St. 461. We are of opinion this position is untenable.

III. Defendants invoke another rule. This court, Sevier v. Woodson, 205 Mo. l. c. 214, has said: "We take it to be well settled law that where a certain estate is granted in plain and unequivocal language in one clause of a will, the same cannot be lessened or cut down by a subsequent clause of the will unless the language used in such subsequent clause is as clear, plain and unequivocal as the language of the first grant." In Gannon v. Albright, supra, and in Yocum v. Siler, supra, it was held that "where the words of a will at the outset clearly indicate a disposition by the testator to give the entire estate absolutely to the first donee, the estate will not be cut down to a less estate by subsequent or ambiguous words inferential in their intent." Conversely it is true that an estate first granted may be cut down by a subsequent clause as "clear, plain and unequivocal as the language of the first grant" and this may be by express words or "by words so strong and clear as to have that effect by plain and necessary implication." [Cox v. Jones, 229 Mo. l. c. 62, et seq.] It cannot be questioned that the will plainly gave Mary C. Hull a life estate in the one hundred and seventy acre tract and a life estate in the two hundred and ninety acre tract, on condition that Oscar predeceased her "without issue or leaving a child who is his lawful heir." It is also clear that the words in the devises to Oscar were sufficient, when considered by themselves, to give him a remainder after the life estate of his mother in the one hundred and seventy acre tract and a fee in the two hundred and ninety acre tract. Both these estates in him were conditioned upon his surviving his mother or leaving direct descendants in case he predeceased her. The fact that in the first tract he would have taken a remainder did not render inoperative the subsequent limitation by way of executory devise; nor did the intervention of the mother's life estate in the two hundred and ninety acre tract, under the limi-

*Unambiguous Devise: Plain Subsequent Clause.*

tations providing therefor, preclude a limitation over to others, to-wit, the "Hull heirs." [2 Washburn on Real Property, p. 679 (340) et seq.] Nor do counsel so contend. Nor do we understand them to contend the language of the limitation over is ambiguous, or uncertain, in itself, except that they argue the donees of the executory devise are not designated with certainty; that it is not clear who is meant by "the Hull heirs." Since the words conditioning the first devises are clear and plain, it might be questioned whether the rule, supra, upon which defendants rely is to govern in examining the question whether the conditional limitation is to fail because of a failure to designate the beneficiary thereof with sufficient certainty. Nevertheless, we are of opinion that the designation is made with sufficient certainty to satisfy that rule. Defendants' argument is that the Hull heirs may have meant the heirs of Oscar G. Hull. This uncertainty, they contend, renders the limitation ambiguous and, therefore, ineffective as against the plain words of the first devises.

*To Hull Heirs: Uncertainty.*

The testator was, in the clause under consideration, disposing of his property on the contingency that Oscar had died without leaving children, and was providing that this disposition should not take effect, at least in enjoyment, until the death of Mary C. Whether or not he had in mind the techincal rules which might govern, it is plain he did not intend an executory devise to the heirs of Oscar; for, if he thought the limitation would vest a remainder at Oscar's death without children surviving, prior to the death of his mother, then if by the "Hull heirs" he intended the "heirs of Oscar Hull," that would have given Mary C., the mother, the fee, since she would then have been Oscar's only heir; whereas, the will expressly gives her only a life estate in the land and makes it plain that the limitation over is subject to that. That the testator intended to give Mary C. both a life estate and a fee, and therefore a fee at

Oscar's death, is not a construction that can be adopted in the face of the plain language of this will. On the other hand, if the testator thought he was postponing the taking effect of the executory devise until the death of Mary C., then he had in mind the facts that, before the limitation could become effective, Oscar would have died without surviving children and that Mary C. would also be dead at the time he had it in mind that the limitation should take effect. If this was in his mind, what could the words "Hull heirs" have been thought by the testator to mean except the heirs of the testator, those of his blood entitled to take under the Statute of Descents and Distribution? Not the heirs of Mary C., because her heirs in no way come within the words. Not the heirs of Oscar, since his "heirs" living after the death of his mother would be the "Hull and Calvert heirs," plaintiffs and defendants. We think the words the "Hull heirs" are plain and clear in themselves. Samuel Hull wrote the will. What draftsman would have doubted, after writing this will down to the clause in which the words in question are used, what Samuel Hull would have meant if he had then directed a clause to be added which would give the whole estate at Mary C's. death, upon the conditions already stated in the will, to the "Hull heirs"? Perhaps the draftsman might have couched the limitation in different words, but such a direction, as hypothesized, if given by the testator, could and would not have been misunderstood and could have meant but one thing, i. e. Samuel Hull's own relatives by blood. There is no uncertainty in the terms used.

The briefs accompanying this opinion cite cases announcing the general rule first referred to, and these cases apply it to various wills. None of them is at variance with the conclusion stated. A discussion of them, seriatim, is not deemed necessary.

III. The plaintiffs have no interest in the personalty left by Mrs. Wilson. The will deals with the per-

sonalty of Samuel Hull's estate entirely separately from
the realty.   In accordance with its terms the personal
property was divided equally between the
Personality.        widow, Mary C., and Oscar G., upon the
latter's attainment of his majority.   What Mary C. ac-
cumulated subsequently was not affected by the will of
Samuel.   It was her own and goes to her heirs.   The
words "the entire estate" in the devise to the Hull heirs
has reference to the realty only.   This provision is fol-
lowed by a bequest of the personalty as already stated.
Neither are plaintiffs entitled to any share in the sixty
acres which Oscar G. Hull purchased after his father's
death.   That, upon Oscar's death, went to his mother
and thence to her devisees.   The judgment is reversed
and the cause remanded with directions to enter judg-
ment in accordance with this opinion.   All concur.